[Crim. No. 3303. In Bank.—February 24, 1930.]

THE PEOPLE, Respondent, v. FRANK ROCCO, Appellant.

R. D. Knickerbocker for Appellant.

U. S. Webb, Attorney-General, John L. Flynn, Deputy Attorney-General, James C. Hollingsworth, District Attorney, and Don R. Holt, Chief Deputy District Attorney, for Respondent.

LANGDON, J.—This is an appeal by Frank Rocco from a conviction of the charge of murdering one James Brady, within the county of Ventura, California.

Briefly, the record discloses: In January, 1929, the defendant Frank Rocco, and his co-defendant, Dominic Leo, came to the city of Los Angeles. They went first to the restaurant operated by one Santanillo, on Lucille Avenue. From there they were taken by Santanillo to the Louise Hotel, in the vicinity of West Sixth Street, where Rocco and his co-defendant rented two rooms. At this time the defendant Rocco was accompanied by his wife and they rented room 309 and his co-defendant Leo rented room 311. The two defendants had driven across the continent in a Packard roadster bearing a Maine license. Shortly after their arrival at the Louise Hotel, the defendant Rocco made the acquaintance of one James Brady, who was subsequently murdered. Brady also had a room at the Louise Hotel. Within a short time the wife of Rocco left and returned to New York. On or about the nineteenth of February, 1929, the deceased, James Brady, went to the King Apartments in the city of Venice, where he, with one Audrey Morosco, rented a double apartment in the rear on the second floor. The defendant Rocco also occupied this

apartment, together with another woman by the name of Geraldine Forrester. During the joint occupancy of this apartment, Rocco and Brady were frequently together and had conversations with reference to the illicit liquor ''racket.''

At about 10:30 P. M. of February 28, 1929, the defendant Rocco, in company with the deceased James Brady and his co-defendant Dominic Leo, left the King Apartments in Venice. The two women remained in the apartment. Rocco, Brady and Leo walked out and got into the gray Packard roadster and drove away, Rocco being the driver of the car. About 1 o'clock in the morning of the following day, March 1, 1929, a resident in the upper Conejo district of Ventura County heard what he described as three or four shots. There was an interval of time and he heard the engine of an automobile. At about 4:30 of the same morning a body was found lying in an open field a distance of one and one-half miles east of the town of Camarillo in Ventura County, a distance of about seven miles west of where the shots were heard. The body was identified as that of James Brady. At about the time of the discovery of the body, the two defendants returned to the King Apartments at Venice, where they were received by the two women, who served them coffee, and shortly thereafter the two defendants left the apartment and did not again return to it. Shortly before he returned to the apartment for the last time, Leo was seen to enter a garage in Venice, a short distance from the King Apartments, with the gray Packard roadster bearing the Maine license. A short time after his first visit to the garage, Leo again returned and took the Packard automobile, and at this time bought a pint bottle of gasoline.

Shortly after Rocco and Leo left the King Apartments, the two women left in a taxicab. Audrey Morosco went to the California Hotel on West Sixth Street, where she rented a room, and the other woman went to the home of one of her relatives. At this time the rent for the apartment at Venice was paid up for another week, but neither Rocco, Leo nor the women ever returned to it. About half an hour after leaving the King Apartments in Venice, Leo was seen by a policeman to park the gray Packard automobile with a Maine license alongside of the curb at the Hotel Louise on West Sixth Street.

An examination of the body of deceased showed that he had received three wounds in his head, which had been inflicted by bullets from a pistol, one bullet having entered on the right side of the head from the rear and another being in approximately the same position on the head on the left side, and the third wound being on the right cheek. The pockets in his clothing had been turned inside out. The gray Packard automobile was found in a garage in the vicinity of Sunset and Glendale Avenues. An examination of the car revealed that it had blood spots on it in fourteen places. There was a bullet hole in the canvas top of the car, and on the right side of the top of the car, toward the rear, some brain matter was found. In the room which the defendant Rocco occupied at the Louise Hotel some underwear was found on which were blood stains. Blood spots were found on the shoes which were being worn by Rocco, which had been covered over with black shoe polish. There was also blood under the seat of the Packard automobile, and there was a package of cigarettes in the car upon which appeared blood stains. The revolver with which the crime was committed was found about one mile from the position of the body of deceased.

When Audrey Morosco left the King Apartments and went to the California Hotel, it was in accordance with the instructions of Rocco. She registered there under the name of Perro and was joined by Rocco at about 2 o'clock in the morning on March 2, 1929.

Both defendants, upon being arrested, made contradictory statements, which were shown to be untruthful, as to their whereabouts and their acquaintance and association with the deceased, etc.

It is apparent from the foregoing that it cannot be contended, with any forcefulness, that the evidence is insufficient to justify the verdict.

It is contended that the court erred in permitting to be read to the jury certain admissions made by defendants. These statements, made after arrest, are to the effect that the defendants "picked up" two women at the Louise Hotel and afterwards Rocco and deceased lived with them at the King Apartments; that they (the defendants) were engaged in traffic in alcohol and had been engaged in such occupation in the east; that they "got in" with Brady and

were willing to make some money assisting him in "running alcohol." It was necessary to prove the charge against defendants entirely by circumstantial evidence, and it was important to connect defendants and deceased and to show opportunity and motive for the crime. It may readily be assumed that persons engaged in the illicit distribution of alcohol must frequently carry large amounts of cash upon their persons, thus giving a motive for robbery. One who was familiar with the "rum running racket" as it is termed in the record before us, and who had previously been engaged in it, would naturally seek the acquaintance and gain the confidence of another so engaged. The statements offered were relevant upon these matters, even though, incidentally, they did discredit the defendants, and if any other portion of the statements was inadmissible, the error of the trial court in ruling upon that portion was not such an error as to warrant a reversal of the judgment where the record discloses no prejudice occasioned by such ruling.

The next objection of appellant is that the trial court erred in not permitting the attorneys who had been appointed by the court to represent defendants to withdraw from the case during the progress of the trial. On March 26, 1929, the trial of the case opened, and after considerable testimony had been taken, on March 29th counsel for defendants moved the court that they be permitted to withdraw as attorneys for the defendants. The reason for the motion, as stated to the court, was that while acting jointly for the defendants, counsel had received confidential communications from both, which made it unethical for them to represent the defendants, either jointly or separately. It was intimated in the long discussions between court and counsel that the defenses of two defendants were adverse to each other. Although counsel forcefully urged this matter before the court, the court insisted that they should continue to represent the defendants; counsel, as insistently, refused and were adjudged in contempt of court, and it was only upon a threat of imprisonment that counsel continued the defense.

It is important to observe, however, that during the course of the discussion between court and counsel, the court asked each of the defendants, separately, if he desired the

attorneys to continue as his attorneys, to which question each defendant answered: "Yes."

The defendants were not entitled to separate trials as a matter of right. (*People* v. *Dowell*, 204 Cal. 109 [266 Pac. 807]; *People* v. *Perry*, 195 Cal. 623 [234 Pac. 890].) If it be conceded that they were entitled to be represented by independent counsel when their defenses were adverse, it must also be conceded that they had the privilege of waiving that right, as they had the privilege of waiving the right to be represented by any attorney. ■ The argument between court and counsel was lengthy and dramatic; it brought forcefully to the attention of defendants any possible dangers to them and to each of them by reason of their joint representation by counsel, but, nevertheless, for reasons which were evidently sufficient to them at the time, defendants not only declined to insist upon their privilege, but expressly stated that they desired counsel to continue in their defense. Since the privilege, if it existed, was entirely for the benefit of defendants, it would seem that the court could not do otherwise than defer to the wishes of the defendants, regardless of the wishes of counsel. And since that was done, the one defendant, who was found guilty, could not object to the action of the court, which he had asked to be taken. Indeed, in the event that the court had permitted counsel to withdraw over the protests and objections of defendants and a conviction had occurred while one of the defendants was being represented by other counsel, such defendant would have had grounds to object that against his insistence he had been denied the right of representation by the counsel that he desired.

There are no other matters requiring consideration upon appeal.

The judgment is affirmed.

Curtis, J., Preston, J., Shenk, J., Richards, J., and Seawell, J., concurred.