[Crim. No. 3486. Second Dist., Div. One. Sept. 18, 1941.]

THE PEOPLE, Respondent, v. WENDELL W. SHAW, Appellant.

Charles M. Kilpatrick for Appellant.

Earl Warren, Attorney General, and Gilbert F. Nelson, Deputy Attorney General, for Respondent.

WHITE, J.—An information filed by the district attorney of Los Angeles County charged the defendant with the crime of burglary and alleged his prior conviction of a felony. The prior felony conviction was admitted by the defendant, and following his plea of not guilty to the burglary charge a trial by jury resulted in his conviction of the offense of burglary of the second degree. A motion for a new trial was denied. This appeal is from the judgment and the order denying him a new trial.

The pertinent facts necessary to a disposition of this case are that on the morning of March 21, 1941, it was discovered that the building occupied by the Standard Parts Company had been burglarized. The safe was opened and its contents strewn about, while all the desks in the office had been searched, and the metal rear door opening into the alley had been rolled back. The Standard Parts Company is a wholesale automobile parts concern situated in the city of Los Angeles. When the establishment closed its business on the night preceding the discovery of the burglary, there were in stock approximately 103 boxes of spark plugs, with ten spark plugs in each box. All of the merchandise just mentioned, with the exception of one plug, was missing. A Chevrolet pick-up truck, which was kept inside the building, was also gone, together with other property, including some headlight bulbs. It was testified that it was possible to drive the truck out through the rear door into the alley. In addition to the property above described, it was testified that approximately eleven blank bank checks had been removed from the check book in the office of the company.

On March 19, 1941, two days before the burglary was discovered, the defendant registered at a hotel in Los Angeles under the name of ''W. W. Smith.'' He paid the rent of his room for the 19th and again on the 20th, but did not advance room rent for the 21st. On the last-named date the janitor of the hotel locked the room so that the defendant could not re-enter unless he paid the rent therefor. On the morning of March 22, the manager of the hotel discovered that defendant had not paid his room rent for the preceding

night, and thereupon she and the hotel clerk went to defendant's room. Upon entering the room, the hotel manager testified, she found boxes of spark plugs stacked in the closet. This witness further testified that one of the boxes found on the floor of the closet was similar to a box previously identified by the owner of Standard Parts Company as having been lost in the burglary. The hotel manager further testified that six blank checks were found in a bureau drawer on top of a sweater in defendant's room, and which checks bore the name "Standard Parts Company." These checks were later identified by the manager of said company as being the checks taken from the check book in the company's office on the night of the burglary. The identification of the box containing ten spark plugs as being part of the stock missing after the burglary was established by the manager of Standard Parts Company through code numbers with which it was marked.

After visiting defendant's room as aforesaid and making the discoveries hereinbefore narrated, the hotel manager notified the police, and officer Ferguson testified he went to the hotel about eleven o'clock on March 22 and waited in defendant's room until the latter appeared. This officer testified that he made an examination of the room and discovered between 35 and 40 boxes of spark plugs in the closet and also the blank checks. He identified the checks introduced in evidence as the ones found by him in defendant's room.

A witness, Philip A. Thornton, testified that on the 21st and 22nd of March he was operating a service station on West Sixth Street in the city of Los Angeles; that on or about the 20th of March, in the afternoon, defendant came to his station, and on that occasion the witness purchased nine boxes of spark plugs for five dollars from the defendant. Following this transaction and on his way out, defendant picked up one of the business cards of the service station and told the service station operator that he would call him with reference to further sales of spark plugs, and that when he called he would give the name "Spot." On the following day defendant called the operator on the telephone and identified himself as "Spot," and in that telephone conversation offered to sell the operator 75 boxes of spark plugs. The operator told the defendant to call later, and subsequently on that same day the latter did call and was told by the opera-

tor what spark plugs to bring. The spark plugs last ordered were never delivered.

At the trial the defendant did not take the witness stand in his own defense, and the only witness offered by him was his mother, who testified to the effect that during the first part of the week in which the defendant was arrested he had resided at her home. As to the whereabouts of the defendant on the dates when it was testified he was registered at a downtown Los Angeles hotel, she had no knowledge.

 As a first ground of appeal appellant urges that the evidence is insufficient to sustain the judgment and that the verdict of the jury is contrary to law and the evidence. In support of this contention it is argued that no direct connection is shown between defendant and the burglary; that during the day appellant was locked out of his room and three other people, viz., the hotel manager, the janitor and the police officer, had keys and access to the room, and that possession of the stolen property by appellant was not sufficiently shown. In the foregoing claim appellant cannot be upheld. He alone was registered at the hotel room from March 19 up to the time of his arrest on March 22. On March 21, when appellant left the room without paying for the preceding night's lodging, he was carrying a shopping bag which he said contained laundry, but which he declined to leave at the hotel laundry agency. He did not occupy the room that night and it remained locked. On the following morning the hotel manager inspected the room and discovered the stolen property. Thereafter a police officer remained in the room until 1:30 o'clock that day, when appellant returned, paid the room rent, entered his room, and was arrested. These facts and circumstances justified the conclusion that appellant was in possession of the room and its contents and also that the stolen property discovered therein was left in the room by him when he departed therefrom on the morning of March 21. Coupled with the foregoing is the further proven fact that at about the time of the burglary appellant was actively engaged in the sale of spark plugs, all of which tends largely to establish the exercise of dominion and control by him over the stolen property found in his room.

 While it is true, as claimed by appellant, that the mere possession of stolen property, unexplained by him, is not of

itself and standing alone sufficient to justify a conviction of burglary even though the commission of the burglary by someone be established, nevertheless it is the law that such possession of stolen property is a circumstance which, when unexplained and taken in connection with other incriminating evidence in the case, may be considered by the jury in determining the question of the guilt or innocence of the defendant charged with burglary. (*People* v. *Golembiewski,* 25 Cal. App. (2d) 115, 117 [76 Pac. (2d) 717].) As was said by this court in the case just cited, "If the court below believed from the evidence that the property mentioned in evidence was stolen from the premises described in the testimony, and, as in the instant case, received into the possession of the defendant shortly after being stolen, the failure of the defendant to account for such possession, or to show that such possession was honestly obtained, is a circumstance tending to show his guilt, and the accused is bound to explain the possession in order to remove the effect of the possession as a circumstance to be considered in connection with other suspicious facts such as the evidence herein disclosed." [1b] In the case at bar we have not only several suspicious facts, but also certain incriminating circumstances which justified the jury in concluding that appellant was the guilty party in the burglary with which he was charged. For instance, it was proved that appellant was registered at the hotel under an assumed name; that he engaged in a series of transactions for the sale of spark plugs under a name that would conceal his true identity; that he was conducting such sales from his hotel room; that the spark plugs taken in the burglary were found in his room shortly after they were stolen. Finally, the direct connection of appellant with the burglary was further established by his possession of checks bearing the name of the corporation victim of the burglary and which were taken during the commission of such burglary.

Lastly, appellant contends that the trial court committed reversible error in refusing to allow him to substitute attorneys and in not granting a continuance to enable substituted counsel to familiarize himself with and prepare for appellant's defense. In this connection it appears that on April 11, 1941, appellant appeared in court and was represented by attorney Sanford Sill, at which time the cause was set for trial on June 3, with the knowledge and consent of

both appellant and his counsel. On the morning of June 3, when the case was called for trial, appellant appeared in court with attorney Charles M. Kilpatrick, but his counsel of record, attorney Sill, was absent. A continuance was thereupon requested on the ground that new counsel had just been brought into the case. The trial court refused to grant a continuance and directed the court clerk to telephone appellant's counsel of record, so that the trial might proceed. In the afternoon of the same day appellant's counsel of record appeared and moved the court that attorney Kilpatrick be associated with him in the trial. This motion was granted. Thereupon the motion for a continuance was renewed on the ground that associate counsel had just entered the case and that neither counsel was prepared. This motion was denied. The cause thereupon proceeded to trial with both attorneys participating in the defense of appellant.

Courts have at all times been zealous in guarding the right of a person accused of crime to have the aid of counsel to defend him. Such zeal has also been manifested by the people of this state, as well as the legislature, the former of whom have caused this fundamental right to be made a part of the Constitution of California, while the latter has inserted it in the Penal Code. Each case, however, must be judged by the particular facts therein presented, and from such facts it must be determined whether or not the defendant was prejudiced by the trial court's ruling denying his motion for a continuance in order to prepare for trial. The case of *People* v. *Simpson,* 31 Cal. App. (2d) 267 [88 Pac. (2d) 175], relied upon by appellant, does not hold that when a substitution of attorneys occurs on the day of the trial it is mandatory upon the trial court to grant a continuance. (*People* v. *McCann,* 34 Cal. App. (2d) 376, 378 [93 Pac. (2d) 643].) What the court held in the Simpson case was that prejudice to the substantial rights of the defendant ensued where the court consented to a withdrawal of the public defender as defendant's counsel, agreed to the substitution of new counsel, and then denied reasonable time within which substituted counsel could prepare for trial. In the case now before us defendant was represented not only by counsel who became of record on the day of the trial, but also by counsel who had represented him at the time of his arraignment

some two months before the date set for trial. We have examined the reporter's transcript in this case and find that both counsel appeared to be familiar with the case, and with considerable ability cross-examined witnesses. Also in the instant case we find that no substitution was made on the day of the trial, but on the contrary, appellant was represented by two attorneys, one of whom at least had been retained and remained as counsel, as heretofore pointed out, for some time prior to the date of trial. Under these circumstances, appellant cannot claim prejudice, and the trial court did not abuse its discretion in refusing a continuance under the facts presented in the case now before us.

To hold that a defendant charged with crime has an absolute right to counsel of his own selection, with unlimited right to insist upon continuances of his trial, would be subversive of the prompt administration and execution of the laws—upon which depends largely their effectiveness. It is at once apparent that the trial court must in the nature of things have some control over such matters, to the end that judicial business may be dispatched in an orderly manner; and if it has any discretion it is apparent to us that such discretion was not abused in this particular instance. Had any prejudice resulted to appellant in the instant case—and as heretofore stated we are of the opinion that none did, but that on the contrary appellant was ably defended—nevertheless, had he suffered prejudice, the responsibility for it might well be placed upon counsel who neglected to inform the court of his retirement from the case until the morning of the trial, or upon the defendant himself if the latter did not advise his counsel of the latter's discharge until the morning of the trial. The remarks made by the learned trial judge upon the hearing of the motion for continuance were well timed and pertinent. After informing counsel who appeared on the morning of the trial that he was not the attorney of record in the case and following the statement to the court by such counsel that defendant had discharged his other attorney, the trial judge said:

"That is something for which the defendant is responsible. If we were to permit a defendant on the eve of trial to discharge his lawyer, who was conversant with the case and then say, 'I want a continuance,' if that were a ground for continuance we would never get to trial. The proposition

is such an old one there is not any question about it. The motion for continuance will be denied on the ground counsel making the motion is not counsel for the defendant, and further upon the ground under the conditions appearing to the court at the present time there is no ground for continuance.''

The judgment and the order denying defendant's motion for a new trial are, and each is, affirmed.

York, P. J., and Doran, J., concurred.