[Crim. No. 5528. In Bank. Apr. 27, 1954.]

THE PEOPLE, Respondent, v. HOWARD S. ROBINSON, Appellant.

*Assigned by Chairman of Judicial Council.

Howard S. Robinson, in pro. per., and Joseph T. Forno, under appointment by the Supreme Court, for Appellant.

Edmund G. Brown, Attorney General, and Elizabeth Miller, Deputy Attorney General, for Respondent.

SCHAUER, J.—Defendants Howard S. Robinson and Therman B. Pratt were charged by information with two counts of robbery; Robinson was charged with having suffered three prior convictions of felony and Pratt with having suffered one such conviction; the information further alleges that at the time of the commission of the robbery charged in Count II defendants were armed with a deadly weapon. The defenses of the defendants were independent of each other; the evidence was sufficient to support either a conviction or an acquittal of either or both defendants on either or both counts. A jury found that Robinson was guilty of the offense charged in Count II; that he was armed as charged at the time of the commission of such offense; and that Pratt was not guilty of the offense charged in Count I. The jury were unable to reach verdicts as to the remaining issues and the trial court declared a mistrial as to such issues. Robinson's motion for new trial was denied and he did not appeal from the order of denial. On motion of the prosecuting attorney Count I of the information against Robinson was dismissed. Robinson appeals from the ensuing judgment of conviction of Count II. He contends that he was deprived of the right to counsel of his choice because, over his request for a continuance to enable him to secure independent counsel, he was required to go to trial represented by counsel for Pratt al-

though such counsel had informed Robinson and the trial judge that there might be a diversity of interest between Robinson and Pratt and had suggested that Robinson should secure other counsel. It is our conclusion that under the circumstances shown the trial court's denial of a continuance to afford Robinson a reasonable opportunity to obtain his own counsel requires a new trial.

The crimes charged were committed in Los Angeles on June 4 and June 22, 1952. The circumstances relating to Robinson's opportunity to obtain counsel of his choice are as follows: Robinson and Pratt were arrested on June 22. Attorney A. P. Coviello represented both defendants at the preliminary hearing. The information was filed on July 17, 1952. On July 21 defendants, still represented by Mr. Coviello, were arraigned and pleaded not guilty. Trial was set for August 18. On August 18 the cause was called for trial and the following occurred:

"MR. COVIELLO: Your Honor, in this case, unfortunately, I am not quite ready here. Mr. Robinson at least 10 days ago, or two weeks ago, had consulted other attorneys. I don't want to go into a lot of detail, but he did tell me in the attorneys' room that he didn't want me to represent him. I indicated that I wanted him to secure counsel. I felt that there might be a diversity of interest between my client, Mr. Pratt, and Mr. Robinson. I have known Mr. Pratt for some time.

"He has told me this morning here that he hasn't made definite arrangements with any attorney. I don't know if he has consulted a public defender or not. I want to assure your Honor I can't represent him in court if he doesn't want me to. As far as I am concerned, I am ready to defend both these men, and I did go originally on the assumption that I would defend both of them, but I say again at least two weeks ago, or 10 days ago, I told him in the attorneys' room I thought it would be wise for him to get another attorney so there would be no question of diversity of interests here. In view of what he said, I think I would like to ask the Court to continue it for at least a week. I will leave it up to him here, if your Honor wants to interrogate him.

"DEFENDANT ROBINSON: I would like to ask this case be continued for two weeks because I would like to get an attorney.

"THE COURT: What do you gentlemen want to do in this matter?

"Mr. Russell [deputy district attorney]: Well, we have quite a few witnesses here. It seems to me that the matter should have been put on the calendar when some question arose between counsel and his client as to the situation. I haven't been advised prior to this time that there was any contemplation of continuance.

"The Court: Is the public defender here?

"Mr. Russell: No, your Honor. I might state, so far as our calendar is concerned, it will have to go at least to the latter part of September.

"The Court: In view of the large number of witnesses here, I prefer not to continue the matter. Perhaps we could get a public defender at the last moment.

"Mr. Russell: The public defender wouldn't accept the case, if they had to go to trial today. I don't think it would be fair to them. They would require some opportunity to prepare for trial in the matter.

"The Court: Under the circumstances, I will pass this case for the moment. I would like to talk to Mr. Russell and Mr. Coviello in this Robinson and Pratt case.

" (Conference in chambers off the record.)

" (Other matters heard.) "

Later on August 18 a jury was impaneled and the trial proceeded with Mr. Coviello representing both defendants and without further comment by Mr. Coviello or defendant Robinson as to Coviello's representation of Robinson.

The victim of each crime identified defendants as its perpetrators. A passerby who witnessed the second robbery noted the license number of a Chevrolet automobile which was used by the robbers. Shortly after the robbers fled from the scene of the second crime, police officers in a radio patrol car observed the Chevrolet (which was stolen and which bore stolen license plates of another car) outside a café. According to their testimony Robinson was then in the automobile and Pratt was in the café. They arrested the defendants. In the Chevrolet were a gun which the victim of the second robbery testified had been used in the commission of that crime and a bottle of wine on which was a thumbprint which, in the opinion of an expert, was Pratt's; on the steering wheel was a fingerprint which, in the opinion of the expert, was Robinson's. The officers took the defendants to the city hall in the patrol car. When they reached there, according to the testimony of one of the officers, he found between the back and the rear seat of the patrol car a wallet which had

been taken from the second victim and another wallet which was not connected with this case.

On June 4 Robinson had attempted to cash a check which had been taken in the robbery of that day; the credit manager of the store where Robinson attempted to cash the check stated that it had been reported taken in a robbery and that he was summoning a policeman. Robinson thereupon went out of the store, leaving the check.

Each defendant took the stand and testified to an independent alibi for each crime. Each testified that he did not know how to operate an automobile. Each testified that he had entered the café alone. Pratt testified that he told the arresting officers that he had never seen Robinson before he entered the café; Robinson testified that the extent of his acquaintance with Pratt was that he had "seen him around . . . several times." Each defendant testified that he had not been in the Chevrolet automobile at the time of or prior to his arrest, that he had not seen the above mentioned gun, wallet of the second victim, or wine bottle until he was taken to the city hall. Robinson testified that he acquired the check which he attempted to cash on June 4 in a gambling game.

That the jury considered that this was a close case factually appears from the following circumstances: Although, so far as the reporter's transcript shows, the witnesses were equally positive in their identification of each defendant, the jury, as previously stated, acquitted Pratt of the charge in Count I, convicted Robinson of the charge in Count II, and were unable to agree whether Pratt was guilty of Count II and Robinson of Count I. The jury retired to deliberate at 9:55 a. m. on August 22 and returned to court on two occasions to have certain testimony read (the record does not disclose what testimony was read); at 11 p. m. they were sent to a hotel for the night; at 10 a. m. on August 23 they resumed deliberations and at 2:45 p. m. they returned to the courtroom, returned verdicts on some of the issues, and the court declared a mistrial as to the other issues.

██ The right to counsel assured in the federal courts by the Sixth Amendment to the United States Constitution and in the courts of this state by section 13 of article I of our Constitution includes the right to the undivided assistance of counsel of defendant's own choice and this right is denied by forcing upon a defendant, over his and counsel's objection, an attorney who has been employed to represent a codefendant.

In this connection the United States Supreme Court has held (in *Glasser* v. *United States* (1942), 315 U.S. 60 [62 S.Ct. 457, 86 L.Ed. 680]),

"Even as we have held that the right to the assistance of counsel is so fundamental that the denial by a state court of a reasonable time to allow the selection of counsel of one's own choosing, and the failure of that court to make an effective appointment of counsel, may so offend our concept of the basic requirements of a fair hearing as to amount to a denial of due process of law contrary to the Fourteenth Amendment [citation] so are we clear that the 'assistance of counsel' guaranteed by the Sixth Amendment contemplates that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests. If the right to the assistance of counsel means less than this, a valued constitutional safeguard is substantially impaired. [P. 70 of 315 U.S.] . . .

"There is yet another consideration. Glasser wished the benefit of the undivided assistance of counsel of his own choice. We think that such a desire on the part of an accused should be respected. Irrespective of any conflict of interest, the additional burden of representing another party may conceivably impair counsel's effectiveness.

"To determine the precise degree of prejudice sustained by Glasser as a result of the court's appointment of Stewart as counsel for Kretske is at once difficult and unnecessary. The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial. [Citations.] Of equal importance with the duty of the court to see that an accused has the assistance of counsel is its duty to refrain from embarrassing counsel in the defense of an accused by insisting, or indeed, even suggesting, that counsel undertake to concurrently represent interests which might diverge from those of his first client, when the possibility of that divergence is brought home to the court. [Pp. 75-76 of 315 U.S.]"

This court has held, with reference to the same problem (in *People* v. *Lanigan* (1943), 22 Cal.2d 569, 576-577 [140 P.2d 24, 148 A.L.R. 176]),

"There are many reasons why the objections of Mr. Lavine and the defendants themselves should have been respected. Mr. Lavine had been employed by Giardano as his sole counsel. That employment carried with it a very definite professional

obligation on the part of Mr. Lavine. The engagement required him to 'maintain inviolate the confidence, and at every peril to himself to preserve the secrets, of his client' (subd. (e) sec. 6068, State Bar Act). That admonition to lawyers is as old as the canons of professional ethics. Undivided loyalty to the cause of his client is essential to the personal integrity of counsel and to the maintenance of the high standards of the legal profession. Under the circumstances here presented, fidelity to the client who first employed him would have foreclosed Mr. Lavine from voluntarily representing the codefendant. Since voluntary employment in that behalf would have been improper, compulsory representation should not have been imposed. Mr. Lavine was therefore well within his rights in objecting to his appointment as counsel for Lanigan and Giardano was entitled to the undivided assistance of the counsel whom he had employed. . . . When the time came for the presentation of their defense Mr. Lavine was confronted with the delicate question whether to advise them to testify in their own behalf, for the failure of a defendant 'to explain or to deny by his testimony any evidence or facts in the case against him may be commented upon by the court and by counsel, and may be considered by the court or the jury' (Cal. Const., art. I, sec. 13, as amended in 1934). In criminal cases it frequently occurs that circumstances which make it advisable for one defendant to testify are not present when consideration is given to the question of offering another defendant as a witness. One may be vulnerable to impeaching questions and the other not. It might be highly desirable that the one not so vulnerable take the witness stand and the other not. If the former should do so and the other not, the circumstance might weigh heavily against the latter in the minds of the jury. A like prejudice might not occur if the defendants were represented by separate counsel. Each of the defendants was entitled to have questions of this nature considered and decided by counsel independently of the interests of the other. And counsel should not be hampered or embarrassed by being compelled to choose one course as against the other because of the action taken by the court.''

The People urge that the record does not disclose any diversity of interest on the part of the defendants here. But, as indicated in the above quotations, a diversity of interest in the sense of any factual inconsistency between the

defenses advanced is not the sole or necessarily the controlling consideration underlying the requirement that counsel for a codefendant not be forced upon another defendant. It is not necessary for Robinson to show that he had some diversity of interest from Pratt (e.g., that he might have wished to attempt to strengthen his own case by casting blame for the crimes upon Pratt) ; entirely apart from any factually apparent diversity of interests Robinson was entitled to the undivided loyalty and untrammeled assistance of his own counsel. As stated by the Supreme Court in the Glasser case, quoted more fully above, ''Irrespective of any conflict of interest, the additional burden of representing another party may conceivably impair counsel's effectiveness. . . . The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial.'' ■ Upon the facts of this case we are impelled to conclude that a miscarriage of justice is shown. (See *People* v. *Sarazzawski* (1945), 27 Cal.2d 7, 11 [161 P.2d 934].)

The People suggest that Robinson was attempting improperly to delay the proceedings by seeking a last minute change in counsel. Robinson, at the time Mr. Coviello advised him two weeks or 10 days before the date set for trial that ''it would be wise for him to get another attorney so there would be no question of diversity of interests here,'' was confined in the county jail and his opportunities to communicate with other attorneys were limited. According to his statement he ''was required, under the rules of the county jail, to seek new counsel by mail . . . It is a slow process . . .'' He did make some attempts to obtain other counsel; it does not appear that he knew of the availability of the public defender or that he personally had opportunity to bring the matter to the attention of the trial judge until the case was called for trial. In the circumstances it does not appear that any dilatoriness chargeable to him was of sufficient substance to warrant the grave consequence of being required to go to trial without further opportunity to secure counsel of his choice.

For the reasons above stated the judgment is reversed.

Gibson, C. J., Shenk, J., and Traynor, J., concurred.

CARTER, J.—I concur in the conclusion reached in the majority opinion and generally in the reasoning upon which it is based, as it appears to be in full accord with the views

expressed by me in my dissenting opinion in *People* v. *Dorman,* 28 Cal.2d 846, 855 [172 P.2d 686]. However, in the Dorman case there was no claim of a conflict of interest between the two defendants, the sole claim there being the right of defendant Smith to be represented by counsel of his own choice. Here the claim of conflict of interest does not appear to be of very great moment and the majority opinion does not point out wherein the defendant was prejudiced by the alleged conflict of interest between himself and the other defendant. However, defendant Robinson did express a desire to be represented by counsel of his own choice and Mr. Coviello expressed his willingness to withdraw as counsel for said defendant and permit him to employ other counsel. The court, however, denied these requests and refused to grant a continuance to enable defendant Robinson to obtain counsel of his own choice. Under the facts as disclosed by the majority opinion, it is my view that this constituted an abuse of discretion, because it had the effect of denying defendant Robinson an opportunity to employ counsel of his own choice.

For the reasons above stated and those expressed at length in my dissenting opinion in the Dorman case, *supra,* I am of the opinion that the ruling of the trial court was prejudicial to the rights of defendant Robinson and he should be granted a new trial.

SPENCE, J.—I dissent.

While the majority opinion relies upon certain broad language found in the cited cases, such language must be read in the light of the facts which were under consideration. I find nothing in these cases nor in reason to justify the reversal of the judgment in the present case, and I believe that such reversal will have the effect of seriously interfering with the efficient and orderly administration of justice in our trial courts.

This is not a case in which a trial court has assumed to appoint counsel of one codefendant to represent another defendant over objection on the ground of diversity of interest between the codefendants. (*Glasser* v. *United States,* 315 U.S. 60 [62 S.Ct. 457, 86 L.Ed. 680] ; *People* v. *Lanigan,* 22 Cal.2d 569 [140 P.2d 24, 148 A.L.R. 176].) Neither is it a case in which a defendant has been forced to go to trial with unprepared counsel (*People* v. *Manchetti,* 29 Cal.2d 452 [175 P.2d 533]) or without representation by any counsel. (*In re Masching,* 41 Cal.2d 530 [261 P.2d 251].)

The present record presents a case in which one of two codefendants, who had been jointly represented by counsel of their own choice during the preliminary hearing, arraignment, and in preparation for the trial, appears with such counsel on the day set for trial, which is over 30 days after arraignment; and without previous indication or appropriate motion (Pen. Code, § 1050), informally requests a continuance for the purpose of obtaining other counsel, upon the mere suggestion that "there might be a diversity of interest." Appellant's counsel stated, "as far as I am concerned, I am ready to defend both these men, and I did go originally on the assumption that I would defend both of them. . . ." It is patent from this and the rest of the colloquy that counsel did not believe that any conflict of interest existed, and that he felt that he could continue to represent both without any violation of his duty to either of his clients (Rules Prof. Conduct, rule 5). During the colloquy, the prosecution interposed an objection to the continuance, the case was passed, and the attorneys for both sides conferred with the trial judge in chambers. The proceedings at this conference are not to be found in the record. It may be assumed, however, that the trial judge performed his official duty, and that he satisfied himself, as counsel had previously indicated, that counsel could represent both defendants fairly and without prejudice. The trial judge then called the case for trial. Counsel answered "ready" on behalf of both defendants, and the trial proceeded without any objection by defendant or his counsel. The record reveals that counsel vigorously and ably represented the codefendants, and there is not the slightest indication of any conflict of interest. It thus appears that defendant, without making a proper motion for continuance (Pen. Code, § 1050) and without interposing any proper objection, took the chance of obtaining a favorable verdict; and being disappointed in the result, now seeks a reversal upon the claim that the trial court abused its discretion in denying a continuance under the circumstances. No case has been cited to sustain such a claim.

While our courts should jealously guard the rights of a person accused of crime, there is no absolute right on the part of the accused to insist upon a continance of his trial for the purpose of permitting him to change from representation by one counsel of his choice to another. (*People* v. *Dowell,* 204 Cal. 109, 113 [266 P. 807] ; *People* v. *Whinnery,* 55 Cal.App.

2d 794, 798-799 [131 P.2d 33]; *People* v. *Shaw,* 46 Cal.App. 2d 768, 772-775 [117 P.2d 34]; *Berger* v. *Mantle,* 18 Cal. App.2d 245, 248-249 [63 P.2d 335].) I am in accord with the following language employed by Mr. Justice Schauer, while presiding in the District Court of Appeal, in *People* v. *Whinnery, supra,* at page 799, in quoting approvingly from *People* v. *Shaw, supra*: "To hold that a defendant charged with crime has an absolute right to counsel of his own selection, with unlimited right to insist upon continuances of his trial, would be subversive of the prompt administration and execution of the laws—upon which depends largely their effectiveness. It is at once apparent that the trial court must in the nature of things have some control over such matters, to the end that judicial business may be dispatched in an orderly manner; and if it has any discretion it is apparent to us that such discretion was not abused in this particular instance."

But, as I read the majority opinion in the instant case, if the accused and his codefendant have been jointly represented by counsel of their own choice and the accused merely suggests informally for the first time on the day of trial that there *might* be a diversity of interest between the codefendants, the trial may not proceed and a continuance must be granted, unless perchance the accused may subsequently expressly consent to going to trial with such joint representation. (See *People* v. *Rocco,* 209 Cal. 68 [285 P. 704].) If this be the rule, then trial courts are powerless to prevent dilatory tactics on the part of those accused of crime or to prevent the disruption of the orderly dispatch of the work of our busy courts. I cannot subscribe to such a rule.

For the above reasons and those stated by Mr. Presiding Justice Moore when the case was before the District Court of Appeal (*People* v. *Robinson* *(Cal.App.) 259 P.2d 683), I would affirm the judgment.

Edmonds, J., concurred.

---

*A hearing was granted by the Supreme Court on September 4, 1953.