[Crim. No. 7710. In Bank. June 18, 1964.]

THE PEOPLE, Plaintiff and Respondent, v. WILLIAM DOUGLAS et al., Defendants and Appellants.

Marvin M. Mitchelson and Burton Marks, under appointment by the Supreme Court, for Defendants and Appellants.

Stanley Mosk, Attorney General, William E. James, Assistant Attorney General, and Jack E. Goertzen, Deputy Attorney General, for Plaintiff and Respondent.

PETERS, J.—After a jury trial, defendants Douglas and Meyes were convicted of ten counts of robbery, one count of assault with intent to commit murder, and two counts of assault with a deadly weapon. In addition, Meyes was adjudged to be an habitual criminal, having been found to have suffered convictions of burglary in 1948 and of two robberies in 1950 and 1951. Both defendants appealed from the judgments of conviction and from the denials of their motions for new trials. Such appeals were perfected prior to the 1961 amendments to section 1237 of the Penal Code.

On a previous appeal, the United States Supreme Court reversed the affirmance of the convictions because the defendants had not been represented by counsel at the appellate stage. (*Douglas* v. *State of California*, 372 U.S. 353 [83 S.Ct. 814, 9 L.Ed.2d 811].) That decision was limited to the issue of right to counsel on appeal, the court holding that the Fourteenth Amendment requires appointment of counsel for indigent defendants at *"the one and only appeal* an indigent has as of right" (*Douglas* v. *State of California, supra,* at p. 357 [83 S.Ct. 814, 9 L.Ed.2d at p. 814]). Defendants have now had the aid of counsel on appeal. We hold here that the convictions must be reversed because of the infringement of the defendants' right to counsel at the trial stage.[1]

Prior to the trial of the instant case, the defendants had

---

[1]Although the point as to the denial of counsel at the trial level was argued and briefed before the United States Supreme Court, the majority opinion is silent on the point, being limited to a discussion of the right to counsel on appeal. Justice Harlan, however, joined by Justice Stewart, mentions the point in his dissent in a limited way in a footnote. That footnote reads as follows: "Petitioners also contend that they were denied the effective assistance of counsel at trial. This claim, in my view, is without merit. A reading of the record leaves little doubt that petitioners' dismissal of their appointed counsel and their efforts to obtain a continuance were designed to delay the proceedings and, in all likelihood, to manufacture an appealable issue. Moreover, the trial court acted well within constitutional bounds in denying the claim that there was a conflict of interest between Douglas and Meyes that required a separate appointed attorney for each." (*Douglas* v. *State of California, supra,* 372 U.S. 353 at p. 367 [83 S.Ct. 814, 9 L.Ed.2d at p. 820].)

been jointly tried for the murder of a police officer while he was attempting to arrest them for some of the crimes here involved. After a mistrial, a second trial resulted in the conviction of Meyes for second degree murder and the acquittal of Douglas. Meyes was also there found to be an habitual criminal. During the course of those trials, evidence of the offenses here involved was introduced for the purpose of showing motive. At those trials, Meyes and Douglas had been represented by a deputy public defender, and Douglas by private counsel.

A preliminary hearing on the charges involved in this appeal was held on August 3 and 4, 1959. The defendants were there jointly represented by Public Defender Salter. On August 18th, the defendants were arraigned. A single public defender, Norman Atkins, was appointed to represent both defendants at the trial. On August 21st, the trial was set for September 30th. On the morning of the 30th, the trial judge was challenged and an affidavit of prejudice under Code of Civil Procedure section 170.6 was filed. It was properly denied on the ground that it was not timely. Then Atkins moved for a continuance on the ground that he needed more time to prepare the defense, to complete his investigations in support of alibi defenses, and to study more carefully and cross-index the transcripts of the prior murder trials. A continuance was denied. Then, on behalf of Douglas, Atkins requested that the court appoint separate counsel, on the ground that the interests of the codefendants conflicted and that therefore single counsel would be embarrassed in defending both. The trial court ruled that no conflict existed, and refused to appoint separate counsel. After a brief recess, Atkins again moved for a continuance, on the ground that Douglas had been in contact with an attorney, one Leo Brennan, and that he had made arrangements with Brennan to handle the defense. Subsequent statements by Douglas indicated that in fact no definite arrangements had been made. The court denied the motion. At this point, as the impaneling of the jury began, both defendants, particularly Meyes, began to complain that Atkins was unprepared, in that he had been to see them only twice before the trial, for short periods, and had not read the transcripts of the previous trials. It was noted in the record that these complaints were addressed to the jury panel, not to the court. Meyes disrupted the proceedings to the point of interfering with Atkins' conduct of the defense. Notwithstanding such con-

duct, the public defender did his best on behalf of the defendants. He stated emphatically that he was not as well prepared as he would have liked to be, although he later indicated that he thought he could carry on the defense and could supplement his preparation as the trial progressed. Atkins successfully moved for sequestration of witnesses, and then questioned the jury on *voir dire*. The defendants again complained of Atkins' lack of preparation and insisted upon dismissing him, after having been warned that the dismissal would not entitle them to a continuance and that they would have to proceed without counsel. After further colloquy, there occurred an apparently unqualified dismissal of counsel by each defendant. Thereafter, jury selection was completed and trial was had. The defendants made no defense, did not cross-examine any prosecution witnesses, but continued to disrupt the proceedings, repeatedly demanding counsel. The jury returned a verdict of guilty.

On this appeal respondent argues that even if defendants were entitled to counsel, that right was waived. There is no merit to this contention.

Appellants were clearly entitled to counsel. ▮ The right to trial counsel is guaranteed by the Sixth Amendment, which is applicable in criminal trials in the state courts (*Gideon* v. *Wainwright,* 372 U.S. 335 [83 S.Ct. 792, 9 L.Ed.2d 799, 93 A.L.R.2d 733]), and by section 13 of article I of the California Constitution. "The right to counsel is a fundamental constitutional right, which has been carefully guarded by the courts of this state." (*In re James,* 38 Cal.2d 302, 310 [240 P.2d 596].) ▮ Meaningfully applied, the right to counsel includes the opportunity to receive "effective aid in the preparation and trial of the case." (*Powell* v. *Alabama,* 287 U.S. 45, 71 [53 S.Ct. 55, 77 L.Ed. 158, 84 A.L.R. 527]; *People* v. *Mattson,* 51 Cal.2d 777, 790 [336 P.2d 937].) ▮ To be sure, this right may be waived (*Johnson* v. *Zerbst,* 304 U.S. 458, 465 [58 S.Ct. 1019, 82 L.Ed. 1461, 1467 [146 A.L.R. 357, 362]; *People* v. *Rocco,* 209 Cal. 68 [285 P. 704]), but "a finding of waiver is not lightly to be made." (*Moore* v. *Michigan,* 355 U.S. 155, 161 [73 S.Ct. 191, 2 L.Ed.2d 167, 172].) ▮ "It has been pointed out that 'courts indulge every reasonable presumption against waiver' of fundamental constitutional rights and that we 'do not presume acquiescence in the loss of fundamental rights.' ▮ A waiver is ordinarily an intentional relinquishment or abandonment of a known right or privilege." (*Johnson* v. *Zerbst,*

*supra*, 304 U.S. at p. 464 [58 S.Ct. 1019, 82 L.Ed. at p. 1466, 146 A.L.R. at pp. 361-362].) These principles are "equally applicable to asserted waivers of the right to counsel in state criminal proceedings." (*Carnley* v. *Cochran*, 369 U.S. 506, 515 [82 S.Ct. 884, 8 L.Ed.2d 70].) Not only must the waiver be unqualified, but it may be made only by a defendant who has been apprised of his rights and who has "an intelligent conception of the consequences of his act." (*In re Tedford*, 31 Cal.2d 693, 695 [192 P.2d 3].) Of course, the right to counsel may not be used to subvert the orderly and efficient administration of justice (*People* v. *Thomas*, 58 Cal.2d 121, 131 [23 Cal.Rptr. 161, 373 P.2d 97] ; *United States* v. *Bentvena*, 319 F.2d 916, 936), and its utilization as a tool for dilatory purposes may not be permitted. (*People* v. *Adamson*, 34 Cal.2d 320, 332-333 [210 P.2d 13].)

 Here the waiver, based upon the dismissal of the public defender by each defendant, was not a waiver of the request for separate counsel. This dismissal did not occur until after the trial court had denied the request for separate counsel. When Meyes dismissed the public defender as his counsel, he was faced with the alternative of having joint counsel or no counsel at all. Under the circumstances of this case, such a choice could not constitutionally be forced upon him. Douglas' dismissal of counsel was made immediately thereafter, when he was faced with the same choice. There never was a direct or indirect waiver of the right to separate counsel. As will later be pointed out, defendants had a constitutional right to separate counsel. It would be a strange rule to hold that where the defendants are wrongfully denied their right to independent counsel, a later dismissal of dual counsel amounts to a waiver of independent counsel. Such is not the law. The dismissal here involved cannot be distorted into a waiver of the right to independent counsel if defendants were entitled to that right.

Preliminarily, appellants complain of the denial of the continuance. Penal Code section 1050 provides that "No continuance of a criminal trial shall be granted except upon affirmative proof in open court, upon reasonable notice, that the ends of justice require a continuance." The granting of a continuance is a matter within the discretion of the trial court. (*People* v. *Buckowski*, 37 Cal.2d 629 [233 P.2d 912] ; *People* v. *Ketchel*, 59 Cal.2d 503, 546 [30 Cal.Rptr. 538, 381 P.2d 394].) Of course, a continuance may not be denied if to

do so would deprive counsel of reasonably adequate time to prepare a defense. (See *People* v. *Murphy*, 59 Cal.2d 818, 825 [31 Cal.Rptr. 306, 382 P.2d 346]; *People* v. *Mattson, supra,* 51 Cal.2d 777, 790; *People* v. *Sarazzawski,* 27 Cal.2d 7, 17 [161 P.2d 934].) Although the public defender made clear that he was not as well prepared as he might wish, he did indicate that he had done some preparation and that he could supplement this as the trial progressed. He stated that he had gone through the transcripts of the earlier proceedings to some extent, although he had not cross-indexed them. The trial court pointed out that only a relatively small portion of the transcripts was devoted to the evidence of the crimes here involved. It is also true that Atkins' examination on *voir dire* indicated some familiarity with the case, and that he had formulated some preliminary strategy. He was obviously aware of a need for, and successfully moved for, a sequestration of the witnesses. Thus the problems surrounding the denial of the continuance are difficult ones. But we need not pass on them for the reason that we are of the opinion, for reasons hereafter stated, that a reversal is required because of the refusal to appoint separate counsel.

■ We turn to a discussion of the basic point in the case. On the morning of the trial,[2] the public defender moved for the appointment of separate counsel. He stated to the court that in his opinion there would be an embarassment in defending both defendants simultaneously due to a conflict of interest. Meyes, in a related case, had been convicted of murder in a joint trial which had resulted in the acquittal of Douglas. This, alone, suggests a conflict of interest. Moreover, Meyes had a record of felony convictions, while Douglas did not. One was an habitual criminal, the other was not. Notwithstanding the fact that in the previous trials both defendants had denied any connection with the crimes here involved, it is clear that there might well arise during the course of trial the necessity for tactical decisions in the making of which joint counsel would be hampered due to his obligation of loyalty to the interests of two defendants. In light of the backgrounds of the two defendants, it is reasonably probable that the interests of each would require the pursuit of a different course.

A review of the cases involving the right of codefendants

---

[2]There had been no continuances granted previously, and defendants had been before the court only once after their arraignment, three days thereafter, for the setting of the trial date.

to separate counsel reveals that this right has received expanding protection in the continuing process of refinement of the elements essential to the attainment of a fair trial. In *Glasser* v. *United States*, 315 U.S. 60 [62 S.Ct. 457, 86 L.Ed. 680], it was held that Glasser's right to counsel under the Sixth Amendment had been infringed. Over Glasser's objection, the attorney he had retained was appointed by the court to represent a codefendant, Kretske. Counsel raised the conflict of interests point. The court found that counsel's "representation of Glasser was not as effective as it might have been if the appointment had not been made" (at p. 76 [62 S.Ct. 457, 86 L.Ed. at p. 702]), and stated that "the 'assistance of counsel' guaranteed by the Sixth Amendment contemplates that such assistance be untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests." (At p. 70 [62 S.Ct. 457, 86 L.Ed. at p. 699].) Moreover, the court went on to say:

"There is yet another consideration. Glasser wished the benefit of the undivided assistance of counsel of his own choice. We think that such a desire on the part of an accused should be respected. Irrespective of any conflict of interest, the additional burden of representing another party may conceivably impair counsel's effectiveness.

" ... The right to have the assistance of counsel is too fundamental and absolute to allow courts to indulge in nice calculations as to the amount of prejudice arising from its denial." (At pp. 75-76 [62 S.Ct. 457, 86 L.Ed. at pp. 701-702].) Only the conviction of Glasser was reversed, however, the court noting that Kretske did not contend that he had been prejudiced by the appointment, and that no prejudice appeared in the record.

In *People* v. *Lanigan*, 22 Cal.2d 569 [140 P.2d 24, 148 A.L.R. 176], we held that neither codefendant had received the effective representation to which he was constitutionally entitled. The trial court had appointed the counsel of a codefendant to represent the defendant as well. This was done against the wishes of both defendants and the counsel, and after counsel had raised the issue of conflict of interests. It was held that Giardano was prejudiced in that he was forced to share the attention and efforts of his counsel, and that Lanigan was prejudiced in that there had been imposed upon him an attorney who felt that he could not properly represent him and to whom Lanigan had not consented. With

respect to the conflict of interests, we held that ''Each of the defendants was entitled to have questions of . . . [trial strategy] considered and decided by counsel independently of the interests of the other.'' (*People* v. *Lanigan, supra,* at p. 577.)

*People* v. *Robinson,* 42 Cal.2d 741 [269 P.2d 6], also involved a factual situation where the court assigned codefendant's counsel to represent the defendant as well. There, too, counsel had raised the conflict of interests issue. It was said that the ''right is denied by forcing upon a defendant, over his and counsel's objection, an attorney who has been employed to represent a codefendant.'' (*People* v. *Robinson, supra,* at p. 745.) Furthermore, we ruled that: ''a diversity of interest in the sense of any factual inconsistency between the defenses advanced is not the sole or necessarily the controlling consideration underlying the requirement that counsel for a codefendant not be forced upon another defendant. It is not necessary for Robinson to show that he had some diversity of interest from Pratt ...; entirely apart from any factually apparent diversity of interests Robinson was entitled to the undivided loyalty and untrammeled assistance of his own counsel.'' (*People* v. *Robinson, supra,* at pp. 747-748.)

In *Pappa* v. *Superior Court,* 54 Cal.2d 350 [5 Cal.Rptr. 703, 353 P.2d 311], a case dealing with Code of Civil Procedure section 170.6, the majority opinion stated that in *Lanigan* and *Robinson* ''we held that every defendant is entitled to the undivided loyalty and untrammeled assistance of counsel of his own choice entirely apart from any diversity of interests.'' (At p. 355.) Likewise, in the dissent in *Pappa* it is stated that ''The broad implication of the *Lanigan* case, and the cases cited in that opinion, is that the interests of codefendants in a criminal case are usually adverse. ... The rationale of the opinion is that the mere 'possibility' of interests being adverse is sufficient to bring the rule into play.'' (*Pappa* v. *Superior Court, supra,* 54 Cal.2d at p. 362.) *People* v. *Ingle,* 53 Cal.2d 407 [2 Cal.Rptr. 14, 348 P.2d 577], is not contrary to these views. In that case the issue of a possible conflict of interest was not raised. The defendants had been before the court several times between arraignment and trial but did not request separate counsel until the day of the trial, nor was the request based upon any conflict of interests. Rather, it was obviously a delaying tactic. (Accord, *People* v. *Kroeger, ante,* p. 236 [37 Cal.Rptr.

593, 390 P.2d 369]; *People* v. *Sprinkle,* 201 Cal.App.2d 277 [19 Cal.Rptr. 804]; *People* v. *Rogers,* 207 Cal.App.2d 261 [24 Cal.Rptr. 341].)

In *People* v. *Kerfoot,* 184 Cal.App.2d 622 [7 Cal.Rptr. 674], a conviction was reversed under circumstances very similar to the case before us. The trial judge had refused to appoint separate counsel at a second trial, holding that under the evidence presented at the first trial, over which he had also presided, there was no conflict of interest. It was held that the trial court had not taken cognizance of "the innumerable intangible factors which exist in practically every case such as this." (*People* v. *Kerfoot, supra,* at p. 637.) The court noted that diminished effectiveness would result even in the absence of conflicting interests. *People* v. *Donohoe,* 200 Cal.App.2d 17 [19 Cal.Rptr. 454], after a careful review of the authorities, reaches a similar conclusion, noting also that it makes no difference whether the counsel involved has been employed by one of the defendants or was appointed by the court. (Accord, *Craig* v. *United States,* 217 F.2d 355.) For the reasons stated, it was prejudicial error to refuse to appoint separate counsel. Defendants are entitled to a new trial.

The judgments and orders appealed from are reversed.

Gibson, C. J., Traynor, J., Schauer, J., McComb, J., Tobriner, J., and Peek, J., concurred.