[Crim. No. 6464. First Dist., Div. One. Jan. 15, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. CLARENCE
HUGHES, Defendant and Appellant.

Clarence Hughes, in pro. per., and Lawrence A. Klein, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Karl S. Mayer, Deputy Attorneys General, for Plaintiff and Respondent.

ELKINGTON, J.—Defendant Hughes and one Danny Dunkley were charged with several crimes involving assaults upon a fellow prisoner in a jail cell. Hughes appeals from a judgment of conviction on all charges.

At their preliminary examination attorney Wilmont Sweeney was appointed by the magistrate to represent both defendants. Upon their later arraignment in the superior court the following proceedings took place:

"Mr. SWEENEY: If the Court please with reference to Mr. Dunkley. I was appointed by the court below to represent them and I don't know whether this is a continued appointment or not. There were lower court proceedings.

"THE COURT: That is not true of Mr. Hughes?

"MR. SWEENEY: No, not of Mr. Hughes.

"THE COURT: Mr. Dunkley, you have no attorney here, is that correct?

"DEFENDANT DUNKLEY: No.

"THE COURT: Do you have an attorney of your own?

"DEFENDANT DUNKLEY: No, I don't.

"THE COURT: Do you have any money or property to pay for a lawyer?

"DEFENDANT DUNKLEY: Not at the present time, no.

"THE COURT: Are you working?

"DEFENDANT DUNKLEY: No.

"THE COURT: I will appoint Mr. Sweeney to represent the Defendant Dunkley in these proceedings. Would you arraign the Defendants."

Hughes urges as error the fact that "No inquiry was made by the court as to whether there was any conflict in the positions between these two co-defendants nor was appellant asked whether he consented to have his counsel also represent Dunkley." He argues that, as a matter of law, a duty rested upon the court to make such affirmative inquiry.

The mere fact that an attorney is appointed to represent multiple defendants does not deprive any of the defendants of his right to counsel. (*People* v. *Ingle,* 53 Cal.2d 407, 416-417 [2 Cal.Rptr. 14, 348 P.2d 577]; *People* v. *Jolke,* 242 Cal.App.2d 132, 140 [51 Cal.Rptr. 171]; *People* v. *Odom,* 236 Cal.App.2d 876, 878 [46 Cal.Rptr. 453].) This rule is supported by reason and experience. Very often, where no adverse interests exist, joint defendants on trial appear to be better served by one attorney, than by two. Every trial judge has seen separate counsel, where the interests of two defendants are clearly compatible, adopt differing theories of defense and tactics which tend to prejudice the other defendant without any compensating advantage to his own client. For this reason and perhaps others, informed and competent multiple defendants, well able to afford individual counsel, often by choice agree to representation by the same attorney.

In the very recently decided case of *People* v. *Chacon,* 69 Cal.2d 765, 773-774 [73 Cal.Rptr. 10, 447 P.2d 106], the court stated: "The right to counsel at trial guaranteed by the Sixth Amendment of the United States Constitution (*Gideon* v. *Wainwright* (1963) 372 U.S. 335 [9 L.Ed.2d 799, 83 S.Ct. 792, 93 A.L.R.2d 733]) and article I, section 13 of the California Constitution does not include an automatic right to separate counsel for each codefendant. One counsel may represent more than one defendant so long as the representation is effective. (*Powell* v. *Alabama* (1932) 287 U.S. 45, 71 [77 L.Ed. 158, 171-172, 53 S.Ct. 55, 84 A.L.R. 527].) Effective assistance of counsel is assistance 'untrammelled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests.' (*Glasser* v. *United States* (1942) 315 U.S. 60, 70 [86 L.Ed. 680, 699, 62 S.Ct. 457]; *People* v. *Douglas* (1964) 61 Cal.2d 430, 437 [38 Cal. Rptr. 884, 392 P.2d 964].) If counsel must represent conflicting interests or is ineffective because of the burdens of representing more than one defendant, the injured defendant has

been denied his constitutional right to effective counsel. (*Glasser* v. *United States, supra; People* v. *Robinson* (1954) 42 Cal.2d 741, 745-748 [269 P.2d 6]; *People* v. *Lanigan* (1943) 22 Cal.2d 569, 576-577 [140 P.2d 24, 148 A.L.R. 176]; *People* v. *Douglas, supra; People* v. *Donohoe* (1962) 200 Cal.App.2d 17, 24 [19 Cal.Rptr. 454].)''

Defendant relies principally on *Glasser* v. *United States, supra,* 315 U.S. 60, *People* v. *Lanigan, supra,* 22 Cal.2d 569, *People* v. *Robinson, supra,* 42 Cal.2d 741 and *People* v. *Douglas, supra,* 61 Cal.2d 430, in support of his contention that the court should have made an inquiry into the question of conflict. Those cases do not so hold. And it is noted that in each of the cited cases, the defendant, although pointing out a conflict of interest with another defendant represented by the same attorney, was denied a request for separate counsel.

 The record of the instant case shows that no objection was made to Mr. Sweeney's appointment to represent both defendants. Nor does it appear that even a suggestion of possible conflict was made by Hughes or Mr. Sweeney at any time during the trial. Moreover, employing hindsight and searching the record (*People* v. *George,* 259 Cal.App.2d 424, 432 [66 Cal.Rptr. 442]; *People* v. *Watkins,* 248 Cal.App.2d 603, 606 [56 Cal.Rptr. 734]), we are unable to find that any conflict of interest did in fact develop. At the trial the defense appeared to be simply a denial of the story of the complaining witness and a contention that his observable injuries were sustained when he fell from his upper bunk. The testimony of each defendant was to the same effect; each exculpated himself and the other. Mr. Sweeney represented each defendant ably; his representation of Hughes does not appear to have been less effective because of his representation of Dunkley.[1]

Since there was neither conflict, nor ineffective assistance of counsel because of the trial court's order, it follows that no prejudice ensued from the trial court's failure to make the fuller inquiry now contended for by Hughes.

---

[1]Hughes urges on this appeal, in an attempt to show possible prejudice, that counsel could not adequately discharge his responsibility to either defendant when faced with such a decision as whether a defendant should testify, and that ''Once Dunkley did testify, however, it would have been very helpful to appellant's position if his counsel could have vigorously re-cross-examined Dunkley.'' Since Mr. Sweeney represented both defendants at the preliminary examination, he was familiar with the facts of the case. If a conflict existed he had an opportunity to ask the court that his appointment to represent Dunkley be withdrawn. And since the testimony of each defendant was the same, it would appear that prejudice only could accrue to Hughes from a vigorous cross-examination of Dunkley.

Hughes' next contention is that his representation was constitutionally inadequate. This claim is based upon Mr. Sweeney's representation of both defendants with knowledge of the "possibility of a conflict of interest between" them. As we have indicated, no such conflict appeared and both defendants were competently represented. Certainly the constitutional standards announced in *People* v. *Ibarra*, 60 Cal.2d 460 [34 Cal.Rptr. 863, 386 P.2d 487], and *People* v. *Reeves*, 64 Cal.2d 766 [51 Cal.Rptr. 691, 415 P.2d 35], were met.

Another contention of Hughes relates to the trial court's "reasonable doubt" instructions. The court instructed as follows: "A defendant in a criminal action is presumed to be innocent until the contrary is proved, and in case of a reasonable doubt whether his guilt is satisfactorily shown, he is entitled to an acquittal, but the effect of this presumption is only to place upon the state the burden of proving him guilty beyond a reasonable doubt. Reasonable doubt is defined as follows: It is not a mere possible doubt; because everything relating to human affairs, and depending on moral evidence, is open to some possible or imaginary doubt. It is that state of the case which, after the entire comparison and consideration of all the evidence, leaves the minds of the jurors in that condition that they cannot say they feel an abiding conviction, to a moral certainty, of the truth of the charge.[2] [¶] The law does not require demonstration or that degree of proof which, excluding all possibility of error, produces absolute certainty, for such degree of proof is rarely possible. Only that degree of proof is necessary which convinces the mind and directs and satisfies the conscience of those who are bound to act conscientiously upon it."[3]

Although the giving of these instructions, in conjunction with each other, has been approved (*People* v. *Eggers*, 30 Cal.2d 676, 688 [185 P.2d 1]. *People* v. *Kennelly*, 166 Cal. App.2d 261, 263-264 [332 P.2d 733]), it is contended that they are "not in accord with the standards laid down in *People* v. *Hall*, 62 Cal.2d 104, 112 [41 Cal.Rptr. 284, 396 P.2d 700] (1964); where Chief Justice Traynor stated, 'To justify a criminal conviction, the trier of fact must be reasonably

---

[2]This instruction is in the language of Penal Code section 1096. Penal Code section 1096a provides: "In charging a jury, the court may read to the jury section 1096 of this code, and no further instruction on the subject of the presumption of innocence or defining reasonable doubt need be given."

[3]Both of these instructions are recommended by California Approved Jury Instructions (CALJIC) Rev. Ed., pages 39, 40 (Instructions numbered 21, 22).

persuaded to a near certainty. The trier must therefore have reasonably rejected all that undermines confidence.' '' We believe that proof ''beyond a reasonable doubt'' and ''to a moral certainty'' is the substantial equivalent of proof which reasonably persuades ''to a near certainty.'' No intent is indicated by *People* v. *Hall* to impose a higher or different standard of proof in criminal actions than the widely accepted criteria embraced in the trial court's instructions. (See *People* v. *Tober*, 241 Cal.App.2d 66, 72 [50 Cal.Rptr. 228].)

Hughes' closing brief was prepared and filed by him personally, apparently without knowledge of his attorney. It raises a point not previously discussed. He insists that the trial court's order that his sentences for violation of Penal Code section 245 (assault by means of force likely to produce great bodily injury) and 288a (oral copulation) run consecutively, was violative of Penal Code section 654 which proscribes multiple punishment for the doing of a single act. After correctly stating the law that if ''all of the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.'' (*Neal* v. *State of California*, 55 Cal.2d 11, 19 [9 Cal.Rptr. 607, 357 P.2d 839]), he asserts that the force attending his violation of section 245 was the same force which was preparatory and necessary to accomplish the crime of oral copulation (§ 288a). It follows, he says, that he cannot be doubly punished.

The record strongly supports the inference that the initial beating of the victim was in no way related to the later sex crime, and that the intent to commit the sex crime by force was not formed until after the victim had been severely and wantonly beaten. In such a situation the trial court's determination must be upheld. (*People* v. *Massie*, 66 Cal.2d 899, 908 [59 Cal.Rptr. 733, 428 P.2d 869]; *People* v. *Roth*, 228 Cal.App.2d 522, 534-535 [39 Cal.Rptr. 582].) Additionally, the record shows that 20 minutes after the sex crime was completed Hughes again kicked the victim when he attempted to summon a jailer.

The judgment is affirmed.

Molinari, P. J., and Sims, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 12, 1969.