[Crim. No. 15343.   Second Dist., Div. One.   Feb. 6, 1969.]

THE PEOPLE, Plaintiff and Respondent, v. ROY INGRAM, Defendant and Appellant.

484

James H. Griffin, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and William V. Ballough, Deputy Attorney General, for Plaintiff and Respondent.

FOURT, J.—Roy Ingram appeals from his conviction by the court, sitting without a jury, of burglary. In an information filed by the District Attorney of Los Angeles County, Ingram and two codefendants, Henry Mitchell Jones and Lee Roy Joseph Miller, were charged with burglary in violation of section 459 of the Penal Code. Ingram and each of his codefendants pleaded "Not guilty" and waived jury trial. Ingram's motion for new trial and request for probation following his conviction were denied, and he has appealed his conviction.

On or about September 29, 1967, a furniture store located on South San Pedro Street in Los Angeles was partially burned out. Irving Frank, the owner, immediately boarded up the entrances for protection and requested one of his employees, John Harper, who lived in the South Park Hotel directly across the street from the store, to watch the business. John Harper agreed that he would watch the store from his window all night.

On or about September 30, 1967, at 8:30 p.m. John Harper was stationed at his window when he observed a padded furniture truck pull up outside his employer's store. The driver of the truck, later identified as Lee Roy Joseph Miller, and two others got out of the cab, and another man got out of the back. The men walked over to the door of the furniture store and one of them shook or tested it, then two walked out to the corner of the building and looked around. When they returned, the other two men hit the door full force with their shoulders. John Harper saw the door fly open and then phoned the police. Immediately thereafter he went across the street to investigate personally at the store. As he crossed the street, he saw a patrol car pass, but he couldn't stop it. Officer Beck, who had received a radio call about the burglary, was in the patrol car and he made a U-turn and immediately returned to the store.

Harper testified that he saw all four men enter the store and that each came out with a lamp in his arms. Ingram and Miller carried lamps away from the furniture store and deposited the lamps in the back of the truck, then all four men went back inside the store. Officer Beck returned to the scene just as the four men came out of the store.

Officer Beck testified that when he first drove by the store he saw several men in the doorway looking at him and he could see that the door had been broken in. He received a patrol call, turned around and came back just as the four men were leaving the store. Three of them walked toward the truck. He pulled up behind the truck, stopped, got out of the police car and detained the three suspects. He found Miller seated behind the steering wheel and three stolen lamps in the back of the truck. The men were identified by Harper and the store owner further identified the stolen merchandise.

Appellant testified in his own defense as did each of his codefendants. He declared that on the evening of September 30, 1967, he met Henry Jones and a 17-year-old youth called Ernest or ''Baby,'' and that the three of them walked along San Pedro Street toward Jefferson. They saw Miller, who was then a stranger to each of them, park his truck near the furniture store and go across the street to the liquor store. Ingram saw the police car drive by and noticed that it returned and stopped near the truck. Ingram, Jones and Miller each denied taking any lamps from the furniture store. Miller testified that he bought a can of beer at the liquor store and had some conversation with a friend, then drank the beer and returned to his truck. He confirmed that he had not known Ingram and his friends before the evening of the crime.

▮ Appellant contends that he was deprived of the right to effective counsel because he was represented by the same counsel as was defendant Miller at the trial. All three codefendants were represented at the trial by Deputy Public Defender Shoenheit. At no time did Ingram, or any other defendant or defendants, raise the issue of a conflict of interests or make any request for separate counsel. According to the record, the public defender during the course of the trial and thereafter at no time suggested that there was any reason that Ingram should be or should have been represented by separate counsel. These facts foreclose appellant from raising this contention on appeal because the trial court had no opportunity to consider this issue. (*People* v. *Ingle*, 53 Cal.2d 407, 417 [2 Cal.Rptr. 14, 348 P.2d 577]; *People* v. *Winkelspecht*, 237 Cal.App.2d 227, 230 [46 Cal.Rptr. 697]; *People* v. *Byrd*, 228 Cal.App.2d 646, 649-650 [39 Cal.Rptr. 644]; *People* v. *Sprinkle*, 201 Cal.App.2d 277, 281-282 [19 Cal.Rptr. 804].)

▮ Nonetheless, ''The case has been tried and we have a record which enables us to employ hindsight to ascertain

whether or not there was an actual conflict of interest. . . . Under these circumstances, it is preferable to forego the procedural objection and consider the contention on its merits." (*People* v. *Watkins,* 248 Cal.App.2d 603, 606 [56 Cal.Rptr. 734].) ▮ Our review of the record in the present case convinces us that there was no reason to anticipate that a conflict of interests might reasonably occur between these two codefendants or the others, and that no conflict in fact arose to merit the contention that separate counsel should have been appointed. ▮ "Conflicts of interest among codefendants may arise when it would profit one defendant to attack the credibility of another [citation]; when counsel would be restricted in final summation because he might injure one defendant by arguments in favor of another [citation]; when one defendant has a record of prior felony convictions and the others do not [citation]; when the defenses of codefendants are factually inconsistent [citation]; or when appointed counsel believes a conflict of interest may exist [citation]." (*People* v. *Odom,* 236 Cal.App.2d 876, 878 [46 Cal.Rptr. 453].)

▮ Each of the defendants in the instant case admitted his presence in the vicinity of the crime at the time it was committed and each of them was identified as a participant by the eyewitness who first observed them from a window, then again saw them when he visited the scene of the crime. Each was seen carrying a lamp from the store, and the stolen merchandise was identified by its owner and also by the eyewitness, his employee. The case of burglary was, as to each of the codefendants, simple and complete. All three codefendants testified (see *People* v. *Donohoe,* 200 Cal.App.2d 17, 28 [19 Cal.Rptr. 454]) and each denied committing the crime or seeing it committed. Ingram and Jones said they had not previously known Miller, and he denied that he had known Ingram, Jones, or their juvenile friend. There was no substantial inconsistency between the stories of the three codefendants; in fact, Ingram and Jones confirmed Miller's story that he stopped his truck and went over to the liquor store for a can of beer. There was no conflict in the separate denials of the codefendant and no occasion for one defendant to challenge the credibility of the other. The finder of fact could weigh the credibility of each separately and independently against the other evidence.

Further, there is no indication that the public defender had any reason to believe that a conflict of interest might exist

between the codefendants he was representing. There was no jury and no closing oral argument by counsel. (See *People* v. *Keesee,* 250 Cal.App.2d 794 [58 Cal.Rptr. 780].) Indeed, the record is devoid of any implication by defense counsel that he was being called upon to represent conflicting interests. This was not such a close case as to any one or more of the defendants as to render improper the representation of each by the same attorney. Finally, the prosecution introduced only Miller's single prior conviction for attempted burglary and the court found this charge to be untrue. Miller was fined, while each of the other defendants was imprisoned for his crime. It can scarcely be argued that the evidence of Miller's prior conviction contributed prejudicially to the finding of guilt on the part of appellant. (See *People* v. *Douglas,* 61 Cal.2d 430 [38 Cal.Rptr. 884, 392 P.2d 964].) There being no evidence of any manner in which the rights of defendant Ingram may have been prejudiced by the public defender's joint legal representation of the several codefendants, we conclude that Ingram received the benefit of the right to effective counsel.

Appellant's contention that the attorney who represented him at the preliminary hearing was improperly dismissed is not supported by the record. We are entitled to assume that the appointment of counsel referred to was for the purpose of the preliminary hearing only and such appointment does not extend to the trial. The record discloses that Ingram appeared in propria persona at his arraignment in superior court before the appointment of the public defender to represent him on November 2, 1967. At the trial on April 1, 1968, he continued to be represented by the public defender.

The judgment of conviction is affirmed.

Wood, P. J., and Lillie, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied April 2, 1969.