[Crim. No. 7657. First Dist., Div. One. Apr. 9, 1970.]

THE PEOPLE, Plaintiff and Respondent, v.
WILBERT EARL STEWART, Defendant and Appellant.

458

**COUNSEL**

Royal E. Peterson, under appointment by the Court of Appeal, for Defendant and Appellant.

Thomas C. Lynch, Attorney General, Robert R. Granucci and Michael J. Phelan, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**SIMS, J.**—Defendant Wilbert Earl Stewart, by notice of appeal in the name of Wilbert Earl Steward has appealed from a conviction, following a jury trial, of robbery in the second degree in violation of section 211 of the Penal Code, under which he was sentenced to state prison for the term prescribed by law. His sole contention on appeal is that he was denied the effective assistance of counsel guaranteed by the Sixth and Fourteenth Amendments of the United States Constitution, and article I section 13 of the California Constitution, because he and a codefendant,[1] with alleg-

---

[1] Stewart's codefendant, charged as Tony Boyd, and who declared his true name to be Luther Thompson, likewise appealed from their joint conviction. He was advised

edly conflicting interests, were represented by the same attorney at a joint trial. An examination of the record reveals that he never definitely and unambiguously sought separate counsel, that the record fails to show that it was erroneous to deny him separate counsel, and that in any event it is clear beyond a reasonable doubt from the evidence that any error in failing to appoint separate counsel did not contribute to his conviction. The judgment should be affirmed.

*Statement of Facts*

In order to evaluate the defendant's contention that there was a conflict in the positions of himself and his codefendant it is necessary to summarize the evidence.

The victim in this case was Finley John Bromberg, a 63-year-old resident of McAllister Street near Laguna Street, who is totally blind in the right eye and partially blind in the left. Around midnight or the early morning of July 11, 1968, he left his residence and walked to a nearby liquor store, where he purchased cigarettes, some beer and some soft drinks. He then began to walk home easterly on the south side of McAllister Street. It was his practice to walk near the curb, guiding himself with his cane; and he was about 50 or 60 yards from his home when he was attacked near the intersection of Laguna and McAllister Streets.

On his way home, Mr. Bromberg had heard what he thought were two men, saying, "Let's take him, he's easy." Upon hearing this, he walked to the middle of the street, believing that he would be safer there. The men followed him and commenced kicking and beating him. One of them took his wallet, which contained two dollars and some money orders. His assailants were in the process of dragging him to the south curb when the police arrived. Because of his blindness, the victim was unable to identify his assailants then or at the trial.

Clifton Bates, an airplane mechanic, employed at the Alameda Naval Air Station, was driving easterly on McAllister Street on the evening in question. Approaching the intersection of Laguna Street his headlights revealed what appeared to be three figures engaged in a fight or scuffle in the center of McAllister Street about 20 feet west of the intersection. He then observed two of the figures dragging the third to the south side

---

of the filing of the record and of his right to request the appointment of counsel if indigent. When he indicated his desire to have counsel appointed he was sent, but he never returned, the appropriate forms for the appointment of counsel. A subsequent notice of his default in failing to file an opening brief likewise remained unanswered, and his appeal has been dismissed pursuant to California Rules of Court, rule 17(a).

of the street. As Bates stopped his car he saw a police patrol car approaching the intersection on Laguna Street from the north. At this point two of the three figures detached themselves from the group and ran off in different directions. Two police officers emerged from the patrol car, each pursuing one of the fleeing parties. Bates was able to keep one of the fleeing figures in sight as he fled west on McAllister Street, and saw him being apprehended by one of the policemen. This man proved to be the codefendant. He temporarily lost sight of the other figure as he fled easterly and southerly around the corner of Laguna Street, but the other policeman brought back another person (the defendant) a few minutes later. Bates could not say whether or not this person was the second figure who left the scene.

James Moore, an officer of the San Francisco Police Department, testified that during the early morning hours of July 11, 1968, he was on duty, driving a patrol car south on Laguna Street accompanied by Officer Hans Anderson. As they approached the intersection of Laguna and McAllister, he heard a person crying for help, he saw three people struggling on McAllister Street, and saw that one person was being beaten, while being dragged from the street to the curb. When they stopped in the intersection, Officer Moore noticed that two of the three people began running in different directions. He and Officer Anderson each chased one on foot, and Officer Moore apprehended the defendant after he fell when he turned the corner on McAllister to head south on Laguna. He claims that the defendant never left his sight from the moment he gave chase. As the defendant turned the corner, he slipped and fell, at the same time dropping Mr. Bromberg's wallet from his hand. Officer Anderson testified that he apprehended the codefendant, and that when the defendant was returned by Moore, he recognized him by his clothing as the other fugitive.

Defendant testified in his own behalf. He admitted having been in the vicinity of Laguna and McAllister on the night and at the time in question. He was walking along Laguna toward McAllister, he said, when someone ran around the corner and bumped into him, knocking him down. He was picking up his cap, which had fallen from his head, when a police officer came around the corner with a gun in his hand, and told him to raise his hands. The officer told him to "shut up" when he asked what he had done, and bent down to pick up an object later identified as the wallet belonging to the victim. When taken to the police station, the defendant refused to sign any statement. He also asserted at the trial that at no time was he advised of his constitutional rights or of the grounds for his arrest, and he claimed that he had never seen his codefendant prior to their arrest. On cross-examination, the defendant revealed that on the night in question, he was dressed in a green fatigue jacket and khaki trousers, a descrip-

tion matching the one given by the police officer who had apprehended him, but said that he did not see any fight at the corner of Laguna and McAllister. On cross-examination he admitted that he had suffered prior felony convictions for attempted burglary and second degree burglary.[2]

Officer Moore, on being recalled to the stand, again stated that from the first time he saw appellant in the intersection, to the time he apprehended him, he never let him out of his sight.

The codefendant did not testify.

### Request for Separate Counsel

The information charging the defendants was filed in the trial court on August 6, 1968. The record does not reveal in what manner the defendants were represented at proceedings giving rise to the filing of the information. Each defendant was before the court with the public defender on August 9th and secured a continuance to August 16th for plea. On that date each defendant appeared with the public defender, entered his plea of not guilty, and by consent the matter was continued to the 20th to be set for trial. On August 20th the information was amended to show the prior convictions (see fn. 2 above) and each defendant again appearing with the public defender, denied the priors. On August 26th the public defender appeared for both defendants and the case was set for trial on September 10th. It ultimately came on for trial on September 25th. Both defendants appeared at that time with the public defender, and a jury was selected and advised of the principal charge and the defendants' pleas, all without any comment from either defendant or their mutual attorney.

At the commencement of the afternoon session, apparently before the prosecution made its opening statement or presented any evidence, the defendants' attorney advised the court that his clients were insisting on an " 'A' jury"—"A jury composed of persons selected from each county"— and wanted to appeal from the court's denial of selection of a jury in that manner. Defendant Stewart personally reiterated a request "for the Court

---

[2] By amendment of the information the defendant had been charged with prior convictions of attempted burglary, second degree, January 3, 1951, of burglary, second degree, January 6, 1954, and of possession of narcotics for sale November 20, 1962. His codefendant was charged with convictions of burglary, second degree, October 10, 1947, and a similar offense on December 29, 1953. Each originally denied the prior convictions. At the beginning of the second day of the trial, after the prosecution had finished presentation of its witnesses to the current offense, counsel for the defendants stipulated with the district attorney that the court rather than the jury would rule on the prior convictions upon proper presentation of evidence. Following the verdicts against both defendants, the matter was continued to the time of hearing both defendants' motions for probation, and at that time the allegations concerning the prior convictions were dismissed as to each defendant by the district attorney.

to entertain the motion of an 'A' jury panel." In the following colloquy the judge professed that he, as well as the public defender, had never heard of such a panel. At the conclusion of this discussion, the court inquired, "Anything else?" and the exchange set forth in the margin transpired.[3] On the public defender's suggestion that the codefendant had a question the latter personally requested a separate trial which was denied by the court.[4]

■ On appeal this defendant refers to his request as a personal motion for the appointment of a separate attorney because of "conflict of interest." Emphasis on the quoted phrase fails to give any weight to defendants' other remarks which indicate that he was speaking for both defendants and seeking a new and different attorney and not necessarily separate counsel for himself (see fn. 3 above). The conflict of interest was revealed as the two defendants' joint disagreement with counsel on the type of defense to be presented (see *People* v. *Sanchez* (1969) 2 Cal.App.3d 467, 476 [82 Cal.Rptr. 582]).

If his request, as it appears in context, was for new and different counsel, it would indicate that he was not seeking separate counsel or objecting, as did his codefendant, to the joint trial. (See *People* v. *Winkelspecht* (1965) 237 Cal.App.2d 227, 230 [46 Cal.Rptr. 697], [disapproved on other grounds]; *People* v. *Chacon* (1968) 69 Cal.2d 765, 774 [73 Cal.Rptr. 10, 447 P.2d 106].) The court properly denied his request to have new and different counsel insofar as it was predicated upon any disagreement

---

[3]"MR. STEWARD: Yes. I'd like to make a motion for appointment of counsel. THE COURT: For what? MR. STEWARD: New appointment for counsel. THE COURT: On what basis do you make that motion? MR. STEWARD: Conflict of interest. THE COURT: What do you mean by that? MR. STEWARD: We don't agree on the type of defense. THE COURT: You don't agree with counsel? MR. STEWARD: That's right. THE COURT: Well, Mr. NcNamara has been practicing law in these courts for many, many years. He is a man with considerable appearance [*sic*] and a fine reputation, and I am sure that you will be adequately represented by him. He is a deputy public defender. His services are provided by the People for your defense. All right. That motion is denied. Anything else? MR. STEWARD: Yes. I'd like to file a motion to appeal the denial, if I may. THE COURT: You have been properly advised by Mr. McNamara. Every defendant is entitled to an appeal, as a matter of right. He is only entitled to one and that is at the end of the trial. When the case is over, you can appeal on any grounds that you think are available to you. MR. STEWARD: It's not a question of whether we question Mr. McNamara's integrity, as an attorney. It's just like we feel that we would get a better trial and be better represented by appointed counsel. Someone else. THE COURT: I don't agree with you, Mr. Steward."

[4]The record shows: "MR. THOMPSON: Yes. How about the trial? I would like to have a separate trial. I don't agree with him or Mr. McNamara. I would like to have a separate trial myself. Seems like everything going around and around. THE COURT: Well, if anything is going around and around, it seems to me that you two are responsible for it. Nobody else is going around and around. MR. THOMPSON: I haven't had anything to say. I have been doing a lot of listening. THE COURT: Your motion for separate trial is too late. So your motion is denied."

with the public defender as to trial tactics and strategy. (See *People* v. *Mattson* (1959) 51 Cal.2d 777, 787, fn. 2 [336 P.2d 937]; *In re Atchley* (1957) 48 Cal.2d 408, 418 [310 P.2d 15]; *People* v. *Stewart* (1967) 250 Cal.App.2d 829, 836 [59 Cal.Rptr. 71]; *People* v. *Jackson* (1960) 186 Cal.App.2d 307, 315-316 [8 Cal.Rptr. 849]; *People* v. *Mims* (1958) 160 Cal.App.2d 589, 595 [325 P.2d 234]; and *People* v. *Logan* (1955) 137 Cal.App.2d 331, 335 [290 P.2d 11]; but cf. *People* v. *Marsden* (1970) 2 Cal.3d 118, 123-124 [84 Cal.Rptr. 156, 465 P.2d 44].)

In *People* v. *Odom* (1965) 236 Cal.App.2d 876 [46 Cal.Rptr. 453], the court stated, ". . . at the commencement of any given trial it may be extremely difficult for the trial judge or defense counsel to adequately determine what conflicts then exist or to foresee what new conflicts may develop during the course of the proceedings. For these reasons it would appear sound practice to appoint separate counsel in all cases where a defendant has made a timely demand." (236 Cal.App.2d at pp. 879-880. See also *People* v. *Donohoe* (1962) 200 Cal.App.2d 17, 29 [19 Cal.Rptr. 454]; and *People* v. *Kerfoot* (1960) 184 Cal.App.2d 622, 637-645 [7 Cal.Rptr. 674].) ■ A defendant or his counsel should not be required to divulge the nature of the conflict of interest with a codefendant or codefendants with whom he shares the same attorney. (See *People* v. *Perry* (1966) 242 Cal.App.2d 724, 728 [51 Cal.Rptr. 740]; and *People* v. *Kerfoot, supra,* 184 Cal.App.2d 622, 644.) Nevertheless, in order to invoke action by the court there should be a representation from either the defendant or the mutual counsel for several defendants, not that there is a conflict between attorney and client, but that there is a conflict between the interests of the respective defendants. (See *Glasser* v. *United States* (1942) 315 U.S. 60, 76 [86 L.Ed. 680, 702, 62 S.Ct. 457]; *People* v. *Douglas* (1964) 61 Cal.2d 430, 433 [38 Cal.Rptr. 884, 392 P.2d 964]; *People* v. *Robinson* (1954) 42 Cal.2d 741, 743 [269 P.2d 6]; *People* v. *Lanigan* (1943) 22 Cal.2d 569, 575 [140 P.2d 24, 148 A.L.R. 176]; *People* v. *Watkins* (1967) 248 Cal.App.2d 603, 606 [56 Cal.Rptr. 734]; *People* v. *Odom, supra,* 236 Cal.App.2d 876, 879; and *People* v. *Kerfoot, supra,* 184 Cal.App.2d 622, 629.)

■ It is concluded that the trial court cannot be faulted for failing to appoint separate counsel for the defendant on the representation he made to the court.

*Actual Conflict of Interest*

■ In *People* v. *Chacon, supra,* 69 Cal.2d 765, the court stated: "The right to counsel at trial guaranteed by the Sixth Amendment of the United States Constitution [citation] and article I, section 13 of the California

Constitution does not include an automatic right to separate counsel for each codefendant. One counsel may represent more than one defendant so long as the representation is effective. [Citation.] ■ Effective assistance of counsel is assistance 'untrammeled and unimpaired by a court order requiring that one lawyer shall simultaneously represent conflicting interests. ' (*Glasser* v. *United States* (1942) 315 U.S. 60, 70 . . .; *People* v. *Douglas* (1964) 61 Cal.2d 430, 437 . . .) If counsel must represent conflicting interests or is ineffective because of the burdens of representing more than one defendant, the injured defendant has been denied his constitutional right to effective counsel. [Citations.]

■ "If defendants were denied the right to effective representation of counsel, we cannot presume that the right was waived by a failure to request separate counsel. The court did not advise them of their right to separate counsel if a conflict was present, and we cannot imply from their silence a waiver of that right." (69 Cal.2d at pp. 773-774. See also *People* v. *Mitchell* (1969) 1 Cal.App.3d 35, 39 [81 Cal.Rptr. 478].)

The defendant equates the situation in this case with *People* v. *Douglas, supra,* which was subsequently analyzed as follows in *People* v. *Watkins. supra,* 248 Cal.App.2d at page 607: "The statement in the *Odom* case that a conflict of interest appears when one of two defendants has a prior felony conviction stems from *People* v. *Douglas,* 61 Cal.2d 430 . . . . There defendant A had a record of prior felony convictions while defendant B did not. An attorney representing both defendants could not call A to testify without risking his impeachment; could not keep A off the stand and call B to testify without having the jury draw inferences against A. Thus his joint representation hampered his tactical decisions." ■ Here each defendant allegedly had prior convictions, but the defendant claims mutual counsel was hampered by inability to call the codefendant as a witness in his behalf. Defendant assumes that if he had separate counsel, that counsel could, as joint counsel could not, have called his codefendant to the stand to corroborate Stewart's testimony that he had not been with his codefendant that night, that he first saw him when he was brought around the corner from Laguna Street to the police car, and that in fact he had never met Thompson before that night.[5]

This argument not only assumes that Thompson would so testify, but

[5]Attached to defendant's brief is a declaration under penalty of perjury executed by "Johnny Thomas" dated May 2, 1969 in which, after identifying himself as the codefendant of Stewart, he states: "That I was not acquainted with, did not know and had never seen the co-defendant, WILBERT EARL STEWARD, prior to the arrest of the said WILBERT EARL STEWARD and myself on the night of July 11, 1968; That I did not see the co-defendant WILBERT EARL STEWARD at any time prior to said arrest." This declaration cannot be considered as part of the record on this appeal. It is noted that motions for new trial were interposed and denied in the trial court without the interposition of any such declaration.

also assumes that Thompson's separate counsel would permit him to waive the Fifth Amendment and testify. Separate counsel of course would be guided by the same criteria as may be said to have induced the common attorney to keep Thompson off the stand.[6]

■ Defendant also asserts that the effectiveness of the shared attorney in his defense was handicapped because the counsel in argument could not dwell upon the greater strength of the evidence against the codefendant, as compared with that against defendant without prejudicing the codefendant. (See *People* v. *Chacon, supra,* 69 Cal.2d 765, 775-776; *People* v. *Ingram* (1969) 269 Cal.App.2d 483, 487 [75 Cal.Rptr. 228]; *People* v. *Gallardo* (1969) 269 Cal.App.2d 86, 90-91 [74 Cal.Rptr. 572]; *People* v. *Odom, supra,* 236 Cal.App.2d 876, 878; and *People* v. *Donohoe, supra,* 200 Cal.App.2d 17, 28.) The difference was not great. The codefendant was identified as one who was at the scene by one officer and a disinterested witness. The defendant was identified as having been at the scene by both officers, and the physical facts tended to support their testimony.

The joint counsel could not dwell on the difference between the state of the evidence with respect to Thompson who had not taken the stand, and the defendant who had denied participation in the robbery. (See *People* v. *Mitchell, supra,* 1 Cal.App.3d 35, 39.) He did, however, adequately bring out the conflict in the evidence with respect to the defendant who had denied participation, and the constitutional right of the codefendant to put the People to proof of their case. The right to separate counsel should not be predicated on the right to crucify a codefendant because he exercises his constitutional right to refrain from testifying.

■ Defendant finally contends that the conflict permeated the prosecution's argument because the prosecutor was able to state that the defendant's disclaimer of acquaintanceship with this codefendant was uncorroborated. This argument is subject to the same defects as the argument concerning the failure to secure the testimony of the codefendant. It cannot be assumed that such testimony would have been in the case if each defendant had separate counsel (see fn. 6 above).

■ The cases against the two defendants were complimentary in nature. It was not necessary to implicate one defendant in order to exonerate the

---

[6]Defendant's argument only would hold true if each defendant had a separate trial, if Thompson was tried first and relieved of further jeopardy by acquittal or conviction, and if he would then testify as represented. The matter of Thompson's request for a separate trial is not before the court, but it may be noted that those charged jointly must generally be tried jointly. (See Pen. Code, § 1098; *People* v. *Erno* (1925) 195 Cal. 272, 276-277 [232 P. 710]; *People* v. *Andrews* (1958) 165 Cal.App.2d 626, 635-636 [332 P.2d 408]; *People* v. *Parker* (1954) 122 Cal.App.2d 867, 871 [265 P.2d 933]; and *People* v. *Friday* (1936) 18 Cal.App.2d 197, 198 [63 P.2d 303].)

other. Nor was there occasion for one defendant to challenge the credibility of the other. (See *People* v. *Cannedy* (1969) 270 Cal.App.2d 669, 678 [76 Cal.Rptr. 24]; *People* v. *McGowan* (1969) 269 Cal.App.2d 740, 746 [75 Cal.Rptr. 53]; and *People* v. *Ingram, supra,* 269 Cal.App.2d 483, 487.) The fact that the testimony implicating one was slightly different from the testimony implicating the other, or that one defendant eventually decided to take the stand to present a defense which threw no light one way or the other on the guilt of his codefendant, does not demonstrate a conflict of interest which renders it reversible error to deny the former defendant separate counsel. The culpability and involvement of each of the men who committed the robbery was equal, and, given the establishment of identification, no conflict could be predicated on those issues. (See *People* v. *Romero* (1969) 272 Cal.App.2d 39, 51-53 [77 Cal.Rptr. 175]; and cf. *People* v. *Gallardo, supra,* 269 Cal.App.2d 86, 89.)

It is concluded that there was no substantial conflict in the interests of the two defendants which deprived the appealing defendant of the effective assistance of an attorney, because that attorney also served a codefendant. As stated in *People* v. *McGowan, supra,* ". . . there appears to be no conflict of interest involved in defending both Dandy and Martin. It was not necessary to implicate one to exonerate the other. The question concerning both defendants was primarily one of identity. (See *People* v. *Watkins,* 248 Cal.App.2d 603, 606-607 . . .; *People* v. *George,* 259 Cal.App.2d 424, 432-433 . . ." (269 Cal.App.2d at p. 746.)

*Harmless Error*

■ A comparison of the contentions which the defendant has advanced to show the conflict between the interest of himself and that of his codefendant, with the overwhelming evidence produced by the prosecution, demonstrates that even with a separate counsel the result would have been the same. Defendant was never out of the sight of one officer; he was identified by another, and no one present (other than defendant) observed any persons not accounted for in the vicinity of McAllister and Laguna Streets at the time of the occurrence. Defendant was apprehended redhanded with the victim's wallet.

On this record, the error if any in failing to appoint separate counsel for defendant was harmless beyond a reasonable doubt. See *People* v. *Bryant* (1969) 275 Cal.App.2d 215, 219-225 [79 Cal.Rptr. 549]; *People* v. *Morga* (1969) 273 Cal.App.2d 200, 209-210 [78 Cal.

Rptr. 120]. Cf. *People* v. *Chacon, supra,* 69 Cal.2d 765, 776, fn. 3); *People* v. *Mitchell, supra,* 1 Cal.App.3d 35, 40; *People* v. *Lee* (1969) 275 Cal. App.2d 827, 830-832 [80 Cal.Rptr. 491]; *People* v. *Gallardo, supra,* 269 Cal.App.2d 86, 89-90; and *People* v. *Hughes* (1969) 268 Cal.App.2d 796, 799 [74 Cal.Rptr. 107].)

The judgment is affirmed.

Molinari, P. J., and Elkington, J., concurred.

A petition for a rehearing was denied April 28, 1970, and appellant's petition for a hearing by the Supreme Court was denied June 5, 1970.