Filed 11/7/13  P. v. Mayhan CA5

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F065200 |
| Plaintiff and Respondent, | (Super. Ct. No. 07CM7436) |
| v. | |
| HAYWARD MAYHAN, | **OPINION** |
| Defendant and Appellant. | |

### THE COURT*

APPEAL from a judgment of the Superior Court of Kings County.  Thomas DeSantos, Judge.

Joseph Shipp, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Carlos A. Martinez and Jamie A. Scheidegger, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

*        Before Cornell, Acting P.J., Gomes, J. and Franson, J.

Appellant Hayward Mayhan filed an appeal from an order denying his motion for substitute counsel under *People v. Marsden* (1970) 2 Cal.3d 118 (*Marsden*) following a remand by this court. We affirm.

## FACTS AND PROCEDURAL HISTORY[1]

On October 15, 2006, while a prisoner at Corcoran, appellant thrust an inmate-manufactured spear at two officers when they attempted to serve him dinner in his cell.[2]

As a result of the incident, appellant was charged in November of 2007 with attempted murder (Pen. Code, §§ 664/187)[3], attempted murder of a public official (§ 217.1, subd. (b)), two counts of assault with a deadly weapon by a prisoner (§ 4501), aggravated battery by a prisoner (§ 4501.5); and custodial possession of a weapon (§ 4502, subd. (a)).

Prior to trial, in February of 2008, the trial court suspended criminal proceedings and ordered appellant evaluated pursuant to section 1368. In April of 2008, the trial court found appellant mentally competent and reinstated criminal proceedings.

On July 21, 2008, the trial court denied appellant's first *Marsden* motion, and on November 12, 2008, denied his second *Marsden* motion.

On December 2, 2008, the jury was sworn. The following day, the trial court denied appellant's third *Marsden* motion. On December 5, 2008, the jury found appellant guilty as charged and found that the attempted murder was willful, deliberate, and premeditated (§ 664, subds. (e), (f).) In a bifurcated proceeding, the jury found strike and serious felony allegations true.

---

[1] The facts are taken from the record and file and our nonpublished opinion in *People v. Mayhan* (Mar. 17, 2011, F057373), of which we take judicial notice.

[2] The facts are not at issue in this appeal.

[3] All further statutory references are to the Penal Code unless otherwise stated.

On January 5, 2009, the trial court denied appellant's fourth *Marsden* motion. That same day, the trial court appointed new counsel to investigate whether there were grounds to file a motion for new trial. On March 4, 2009, substitute counsel informed the trial court that she had reviewed the transcripts of trial, appellant's previous new trial motion, and a declaration provided by appellant and found no legal cause for a new trial. The trial court denied the motion for new trial. On March 20, 2009, the trial court denied appellant's fifth *Marsden* motion. That same day, the trial court denied probation and sentenced appellant to state prison for an indeterminate term of 104 years-to-life.

Appellant filed an appeal alleging that the trial court erred when it excluded all of his defense witnesses; declined to initiate subsequent competency proceedings; denied his *Marsden* motions; and failed to give necessity defense[4] and attempted voluntary manslaughter instructions. Appellant also argued defense counsel was ineffective for having him testify in narrative form.[5] He finally argued cumulative error and various sentencing errors.

On March 17, 2011, this court found error occurred during the January 5, 2009, *Marsden* hearings and found several sentencing errors. We conditionally reversed and remanded the matter and ordered the trial court to conduct a *Marsden* hearing focused solely on appellant's complaints that he had mental health issues at the time of the incident. If the trial court found that appellant had shown that a failure to replace counsel would substantially impair his right to assistance of counsel, the trial court "shall appoint new counsel to represent him and shall entertain such applications as newly appointed

---

**4** Appellant admitted making the spear and trying to stab one of the two officers, and that he did so because he was being treated inhumanely and with disrespect by the correctional officers.

**5** Appellant testified against defense counsel's advice that he admitted making the weapon because he wanted the jury to know what "lead up to" the incident, specifically that he had not been fed and had been abused by the officers.

counsel may make." We found further that, if newly appointed counsel makes no motion, or any motions made are denied, or if appellant's Marsden motion is denied, the court shall reinstate the judgment. In the event that the trial court reinstated the judgment, this court ordered the trial court to prepare an amended abstract of judgment indicating a total aggregate term of confinement of 91 years to life.

In accordance with this court's order, the trial court conducted a *Marsden* hearing on April 25, 2012. On May 18, 2012, the trial court denied appellant's *Marsden* motion and reinstated the corrected judgment. At issue in this appeal is the trial court's denial of appellant's April 25, 2012, *Marsden* motion. We find no error and affirm.

## DISCUSSION

Before we discuss the April 25, 2012, *Marsden* hearing at issue, we repeat what occurred at the January 5, 2009, *Marsden* hearing, appellant's fourth such motion, and our finding on that hearing.

January 5, 2009, *Marsden* hearing[6]

On January 5, 2009, following conviction, defense counsel advised the trial court that appellant wanted a new attorney to investigate a motion for new trial. Appellant confirmed this request. The trial court determined that appellant was requesting a *Marsden* hearing.

During the subsequent closed-door hearing, appellant complained that defense counsel had not called four witnesses "prudent" to his case; he claimed he was suffering from "mental health issues" and "extreme duress" at the time of the incident, which was not brought out at trial; and that he and defense counsel had communication issues and never agreed on the "direction" of appellant's defense. Specifically, appellant complained at the hearing that he felt "there was no defense help in my case with the exception of him arguing that, that of the weapon. During the time of the incident, I had

---

[6] Taken from our previous opinion in *People v. Mayhan, supra,* F057373.

4.

mental health issues. I was, believe if I'm not mistaken, I was Triple CMS and doing counseling and on psychiatric-." When the trial court responded, "So," appellant replied, "And none of this came up in my trial during that time and/or before and after [that] I was under extreme duress."

The trial court summarized appellant's concerns as threefold: (1) that defense counsel did not "come up with" a defense that was satisfactory to appellant; (2) that defense counsel failed to argue psychiatric or psychological issues in the matter; and (3) that appellant had "communication issues" with defense counsel. The court stated, "As far as [issues (1) and (2)], the Court actually issued a ruling concerning whether or not some of those issues could be brought into play as whether they were relevant, deeming that they were not relevant in the matters. [¶] … [¶] So the court only sees the communication aspect."

When defense counsel was asked to respond to appellant's allegations, he submitted on the issues, explaining he had "been through" these issues on more than one occasion with appellant. Defense counsel also thought the issues raised by appellant were "unreviewable" by him because they involved a review of his own performance during trial, creating a conflict.

The trial court then denied appellant's *Marsden* motion, explaining that appellant had failed to reach the burden required for the court to appoint new counsel for all purposes, but explained that it would address appellant's request for a new trial in open court.

Back on the record, the trial court stated that defense counsel would not be expected to investigate his own competency during trial with regard to appellant's request for new trial and asked appellant if he wished to pursue the motion on his own. Appellant responded that he wanted another attorney to review the motion. After explaining that a new attorney would take the lead on investigating the merits of such a motion, the court appointed another attorney to do so.

5.

In a hearing two months later, the substitute attorney informed the trial court that she had reviewed the transcripts of trial, the new trial motion, and a declaration provided by appellant and found no legal cause for a new trial.  However, neither the new trial motion nor Mayhan's declaration were part of the record.

Our review of the January 5, 2009, *Marsden* hearing[7]

During the January 5, 2009, *Marsden* hearing, defense counsel, responding to appellant's assertion that defense counsel had failed to pursue "mental health issues" appellant had been suffering from at the time of the offenses, said that they had "been through this on more than one occasion."  The trial court also indicated it had considered appellant's mental health issues before.  On appeal, appellant claimed that, in both the pretrial *Marsden* hearings and the competency proceedings, the focus of the trial court was on current trial competency and not on defenses based on mental health issues at the time of the offenses.  As argued by appellant, his post trial complaint about failure to pursue any mental health defense raised new questions about defense counsel's performance.  Appellant did note that his mental health background was briefly discussed during the November 12, 2008, *Marsden* hearing, when he complained that counsel did not respond to his request to have his "C File" and "114A file" (which appellant described as his "mental health folder") copied and admitted into evidence.  Further discussion with appellant revealed that he did not want to admit the files into evidence but rather have defense counsel review those files in order to explain what led up to the incident that occurred.  Defense counsel stated that he had "several volumes of this case" and had spent "probably a hundred plus hours in reviewing it," although he did not specify whether the mental health file appellant mentioned was included in that review.

Respondent asserted contrarily that appellant's complaint at the January 5, 2009, *Marsden* hearing that he had mental health issues at the time of the incident had to be

---

**7**     Taken from our previous opinion in *People v. Mayhan, supra,* F057373.

6.

viewed in the context of all of the proceedings and appellant's constant insistence that defense counsel failed to present a defense that his actions were the result of "extreme duress." As argued by respondent, appellant's attempt to assert the defense of duress, which the trial court found unavailable and which was discussed on numerous occasions throughout the course of the trial, included consideration of the "mental health issues" of which appellant spoke on January 5, 2009. Thus, respondent argued, those issues had been considered before.

We found nothing in the record to show that the trial court ever, either at the January 5th hearing or at any time before, considered or requested defense counsel specifically respond to appellant's assertion that defense counsel failed to pursue mental health issues as a defense. Although the trial court, in response to appellant's complaint at the January 5th hearing, stated that it had already ruled on that issue, it was not clear from the record whether the trial court was referring to appellant's assertions, to its earlier ruling, or if it mistakenly conflated appellant's mental health issues with the duress defense it had previously ruled on. In any event, we found defense counsel was never asked to respond to this particular concern.

*Marsden* requires that the trial court make a record sufficient to show the nature of the defendant's grievances and the court's responses to them. (*People v. Mendez* (2008) 161 Cal.App.4th 1362, 1368.) This, we found, the trial court failed to do.

April 25, 2012, *Marsden* hearing

At the April 25, 2012, *Marsden* hearing, the trial court began by stating that, as instructed by this court, the hearing would focus "only on appellant's complaints that he had mental health issues at the time of the incident" as alleged during the January 5, 2009 *Marsden* hearing.

Appellant began by testifying that he had raised his mental health issues at the time of the incident many times to defense counsel. Appellant recounted his status in the mental health treatment facility in prison and stated that he informed defense counsel that

7.

he wanted him to bring appellant's "C-file" and mental health file to court to be used as a "defens[e] measure." But appellant was frustrated that defense counsel failed to do so. According to appellant, he was on medication in 2006 when the crimes occurred and he believed that should affect his defense. Appellant explained his mental health history to the court prior to the crimes and explained that, at the time of the crimes, he was "classified as mental health, and the status was Triple CMS, and … was seeing clinicians, and the head chief, head psychs, and all that and … was on psychotropic medication[.]" Appellant claimed he had been on medication from "April 15, 2005 until 2008 or 2007; 2008, or something like that. 2006." Appellant explained that when he first was medicated, at Pelican Bay, he felt the effects for "maybe a week."

The trial court then asked defense counsel about whether he had discussed appellant's mental health and considered it as a possible defense. Defense counsel explained that, prior to the presentation of the defense case, the trial court had denied the defense request to present witnesses on a defense of necessity or duress. As such, defense counsel explained that the two remaining options for appellant related to his mental health history were sections 1368 (competency) and 1026 (insanity) defenses. Defense counsel did not believe a section 1368 defense was appropriate because appellant could comprehend the actions taken against him and could communicate with counsel. In fact, according to defense counsel, appellant was able to articulate his theory of the defense "extremely well, and was very adamant about it," despite the fact that defense counsel could not find supporting evidence for it. According to defense counsel, although he and appellant disagreed "somewhat" on the issue, defense counsel never believed that appellant "was unable to assist counsel or suffered from a mental defect that would prevent him from understanding the complications and the consequences of his particular situation to the point of arising to a [section] 1368 proceeding at that time."

As for an insanity defense pursuant to section 1026, defense counsel stated that he did discuss the issue with appellant, but that appellant did not wish to enter an insanity

8.

defense. Instead, appellant's position was always that he was forced to attack the officers based on his belief of duress or necessity. Defense counsel, who stated he had vast experience with patients on psychotropic medications, explained that "[a]t no time did [appellant] present to me to be someone that was so medicated that he was out of it." Defense counsel noted this was evidenced by the fact that appellant had planned the attack on the officers for some time based on his feeling of how the officers were treating him.

The trial court stated that it did not believe this court was looking at a section 1368 defense, but was focused more on counsel's consideration of a section 1026 defense. Defense counsel again confirmed that he had considered and discussed an insanity defense with appellant, but elected not to go forward with it. Defense counsel reiterated:

> "I believe it was discussed with him early on. But, again, it was not his position that he didn't understand what was going on; [instead] that his actions were deliberate in response to the provocation and threats and duress that he felt at the time."

In response to the trial court's question whether there had been a discussion as to the medication appellant was taking or his claim that he was a "mental health designee," defense counsel acknowledged that appellant was "designated as Triple CMS at the time," which was always a "red flag," and he had discussed those issues with appellant. In all the times defense counsel spoke to appellant, although at certain times he was taking some medication, defense counsel did not believe that appellant's thoughts or his ability to cooperate with defense counsel or reasonably move forward were ever clouded by medication, "nor did it raise an issue in regards to a 1026 insanity defense at the time of the defense."[8]

---

**8**  While the reporter's transcript indicates that defense counsel said, "the defense," given the context of the statement, it is likely a typographical error and defense counsel actually said, "the offense."

9.

The trial court then asked defense counsel that, if there had been some issue that appellant was unable to comprehend at the time of the incident, did defense counsel know "how to go about asking the Court for doctors…" Defense counsel assured the trial court that he was "well versed" on the issues of whether a section 1026 or 1368 proceeding was appropriate or whether to request an "outside expert pursuant to [Evidence Code section] 730," and that he had had significant contact with doctors at the time. Defense counsel spoke with Dr. Estner[9] "informally" about appellant's case, primarily in regards to appellant's fixation with particular issues, such as the issues of duress and necessity.

The trial court then asked appellant for comment. Appellant maintained that "none of these issues" were ever addressed by defense counsel from the time he was first assigned to the case up until the close of trial. Appellant claimed he only discussed the issue in the context of speaking to a "female psychiatric specialist" who asked him if he could "co-exist" with defense counsel. But, according to appellant, she did not ask how he had felt at the time of the incident or what medication he was on at the time.

When asked by the trial court if he had told "them" how he "felt" appellant said, "Yes. On numerous occasions, or I thought I did. Maybe I was impaired at the time .…" When asked how he felt today, appellant stated that, although he had been shot in the head, over the years he had managed "to deal with it," but for the most part he felt competent enough to understand what was going on. When asked whether he was taking the same type of medication currently, appellant stated, "No. I try to deal with it myself."

Appellant explained again that when he was in Pelican Bay, "they shot me up, and this went on for days." When asked by the trial court if this was before the trial, appellant stated that it was "before the incident and, you know, it led up to that." Appellant stated that he was taking psychotropic medications "on and off until 2008." According to appellant, he tried to tell defense counsel that he was on medication and

---

[9]     Dr. Estner had done a psychiatric report on appellant dated October 1, 2007.

seeing clinicians at the time of the incident. Appellant testified that he also told defense counsel that he should be reviewing his "C-file" and "mental health file," and "these are loopholes that you need to … check into … for me to have the best defense possible," but that defense counsel ignored his request. Appellant claimed he did this at each meeting he had with defense counsel.

When asked again by the trial court whether appellant had discussed the various possible defenses with defense counsel, appellant stated he thought he did, "unless I was somewhere else. And if I was somewhere else, then I was mentally impaired then." Appellant again reiterated his belief that, if he was on medication when these incidents occurred, defense counsel should have addressed that. Appellant stated that the jury should have known that, even if he was not on medication at the time of trial, he was at the time of the incident, as well as under psychiatric care. Appellant thought that information could have swayed a decision by the jury.

When asked to respond, defense counsel stated that he had discussed with appellant the fact that diminished capacity was not a defense in this situation, but that it might be an issue on certain elements of the attempted first degree murder charge. But appellant's issue of intent always went back to appellant's belief that he had a defense of duress or necessity. Defense counsel stated that at no time did appellant express a wish to enter a plea of not guilty by reason of insanity. As for his competence, defense counsel stated that appellant was examined by several doctors, one of whom, Dr. Geiger, examined him closest to the time of the incident and found him competent.

The trial court then asked defense counsel if, after reviewing appellant's documentation and the fact that he may or may not have been under medication at the time of the incident, or may or may not have told him he wished to plead guilty by reason of insanity, had defense counsel still considered an insanity plea. Defense counsel stated

11.

that he did, but that appellant did not wish to do so. Instead appellant wanted to proceed on finding supporting witnesses for the issue of duress or necessity.[10]

Appellant insisted that defense counsel at no time asked if he was interested in a plea for temporary insanity due to mental health issues.

Appellant then asked that the trial court look at various documents he brought with him to the hearing attached to his written motion.[11] Defense counsel was allowed to review the documents and stated that he was in possession of all of them. Included was Dr. Geiger's report, which was done as part of the section 1368 proceeding, in which the doctor opined that, although appellant had a long history of mental illness, he was able to communicate and speak with defense counsel in building a defense.

In a final argument, defense counsel noted that, in regards to a section 1026 defense, appellant repeatedly asserted in all of his many *Marsden* hearings that he was "not crazy" and could move forward in the case. According to defense counsel, at no time did appellant want to say or admit that he was psychotic at the time of the incident, and he was not interested in an insanity plea. Instead, he was steadfast on the issue that he was forced into his actions during the incident.

In its May 18, 2012, ruling on the *Marsden* hearing, the trial court summed up appellant's concerns as follows:

> "During the relevant *Marsden* hearing, [appellant] indicated that [defense counsel] had failed to take steps to investigate or otherwise address a potential mental health defense to the charges against him in this case. Specifically, [appellant] explained to the Court that at the time of the 2006 incident, he was under medication for his mental health issues and believed

---

**10** This is an issue we rejected in appellant's previous appeal.

**11** The documents were received by the court and included a psychological evaluation done on April 3, 2008, pursuant to the competency proceeding. In it is mention of the fact that Dr. Estner had done a psychiatric report on appellant dated October 1, 2007.

that such facts should have been raised in the defense to the charges against him."

The trial court noted that the documents attached to appellant's written motion confirmed that he was a participant in the mental health system at Corcoran at a "CCCMS level of care." The trial court stated that, according to appellant, he told defense counsel that he needed to secure his "C-file" and his mental health file from the prison and that his mental health status at the time of the incident needed to be explored but that defense counsel ignored his request.

The trial court stated that defense counsel, in response to appellant's allegations, stated that the issue of appellant's mental health was considered by him; that he understood appellant to be at the CCCMS level of care at the time of the incident; and that, in conversations with appellant, appellant insisted that he had no other option but to take the action he did during the incident. The court also stated that defense counsel had said he discussed with appellant the inconsistencies between a section 1026 defense and his insistence that his actions were based on necessity and duress, and that the evidence secured from appellant confirmed that he had planned the actions for some time prior to the incident. The court stated that defense counsel had also discussed with appellant the fact that diminished capacity was not a defense, but only relevant to the issue of his level of intent.

The trial court then stated:

"Based upon the foregoing and the entire record before this Court, it's hereby ordered the motion is denied. [¶] It appears that [defense counsel] appropriately considered and rejected as a matter of trial tactic[s] a mental health defense in favor of an affirmative defense, and based those theories of duress and necessity most consistent with the facts as relat[ed] to [defense counsel] by [appellant]. [¶] Disagreement over trial tactics does not warrant appointment of new counsel."

13.

Applicable Law and Analysis

A *Marsden* motion is addressed to the discretion of the trial court and a defendant bears a very heavy burden to prevail on such a motion. (*People v. Bills* (1995) 38 Cal.App.4th 953, 961.) "When a defendant seeks to discharge his appointed counsel and substitute another attorney, and asserts inadequate representation, the trial court must permit the defendant to explain the basis of his contention and to relate specific instances of the attorney's inadequate performance." (*People v. Crandell* (1988) 46 Cal.3d 833, 854, abrogated on another ground as stated in *People v. Crayton* (2002) 28 Cal.4th 346, 364-365.) "The defendant … cannot rest upon mere failure to get along with or have confidence in counsel." (*People v. Bills, supra,* at p. 961.)

A disagreement as to tactics and strategy is not sufficient to require a substitution of counsel. (*People v. Stewart* (1970) 6 Cal.App.3d 457, 464-465.) There is "no constitutional right to an attorney who will conduct the defense of the case in accordance with an indigent defendant's whims." (*People v. Nailor* (1966) 240 Cal.App.2d 489, 494.) Neither can a defendant compel substitution of counsel through his own intransigence and failure to cooperate. (*People v. Kaiser* (1980) 113 Cal.App.3d 754, 761.) "[A] defendant may not force the substitution of counsel by his own conduct that manufactures a conflict." (*People v. Smith* (1993) 6 Cal.4th 684, 696.)

Appellant contends that the trial court erred in denying his most recent *Marsden* motion because he demonstrated "colorable claims demanding appointment of counsel to investigate a new trial motion based on failure to investigate and present apparently significant medication/mental health issues going to diminished actuality." (Full capitalization omitted.) Based on his allegations of error, appellant requests that this Court remand this matter again with instructions to appoint new counsel to investigate his medication and mental health issues. In the alternative, appellant seeks to have this court remand the case again for further inquiry in another *Marsden* hearing. We find no error on the part of the trial court in denying appellant's *Marsden* motion.

14.

On remand, this Court ordered the trial court to hold a *Marsden* hearing "focused only on appellant's complaints that he had mental health issues at the time of the incident." Despite appellant's claims to the contrary, we find that the trial court properly investigated his complaints about defense counsel's investigation of his mental health status at the time of the incident.

At the *Marsden* hearing, the trial court gave appellant ample and repeated opportunity to explain his mental health history and treatment and his concerns involving defense counsel. During the hearing, appellant stated that he had raised his concern regarding his mental health status at the time of the incident to defense counsel. As such, appellant acknowledges that defense counsel was aware of appellant's mental health status and appellant's belief that it should be used defensively.

Defense counsel, in response to appellant's statements and the trial court's questioning, demonstrated that he had considered an insanity defense for appellant, but that appellant had refused to consider such an option. Defense counsel explained that, after the trial court denied the defense request to present a defense of necessity or duress, he considered the defenses of competency (§ 1368) and insanity (§ 1026). Defense counsel then explained to the trial court why he did not present either of those defenses at trial. Specifically, defense counsel stated that, while he did consider and discussed with appellant the possibility of an insanity defense, appellant was adamant about not pursuing such a defense.

Thus, contrary to appellant's claim, this was not a case where defense counsel failed to consider appellant's mental status at the time of the crime. Instead, because appellant insisted on it, defense counsel instead prepared a duress or necessity defense, which was subsequently not allowed by the trial court.

In addition, contrary to appellant's assertions on appeal, the record demonstrates that defense counsel knew of appellant's mental health history but determined that appellant was not mentally impaired at the time of the crimes. Defense counsel explained

15.

that he had a great deal of experience with medicated and mental health clients and assured the trial court that he knew how to ask the court for help if he needed additional professional assistance in assessing a client. In appellant's case, defense counsel discerned no indication that appellant did not understand the consequences of his actions at the time of the incidents. Defense counsel noted that appellant's judgment never appeared clouded by medication, as evidenced by the fact that appellant took the time to construct a weapon to attack the officers. Defense counsel, in fact, believed that appellant's actions in the attack were "deliberate."

The record supports, as the trial court found, that defense counsel made a reasonable tactical decision not to present an insanity defense. The lengthy discussion during the *Marsden* hearing demonstrates that both the trial court and defense counsel adequately considered appellant's mental health argument. Defense counsel repeatedly affirmed that appellant could communicate with him, and that defense counsel believed appellant understood the nature of his actions at the time he committed the crimes, as evidenced by the fact that appellant took the time to fashion a weapon and believed he was justified in attacking the officers in response to continued harassment.

Based on defense counsel's repeated affirmations that he presented appellant with an option to enter an insanity plea, we find, as did the trial court, that defense counsel sufficiently investigated appellant's mental health issues at the time of the offense and properly denied appellant's *Marsden* motion. The fact that appellant did not agree with defense counsel's trial tactics is of no concern. (*People v. Stewart, supra,* 6 Cal.App.3d at pp. 464-465; *People v. Nailor, supra,* 240 Cal.App.2d at p. 494.) Furthermore, although appellant disagreed with defense counsel's assertions that the two had discussed an insanity plea, defense counsel repeatedly affirmed that he had. "To the extent there was a credibility question between defendant and counsel at the hearing, the court was 'entitled to accept counsel's explanation.'" (*People v. Smith, supra,* 6 Cal.4th at p. 696.) Given the fact that defense counsel demonstrated an in-depth understanding of

appellant's mental health status and its consequences, the trial court likely concluded defense counsel's explanation was more persuasive.

We find that, on the record before us, and contrary to appellant's assertions, the trial court adequately considered defense counsel's investigation into appellant's mental health status at the time appellant committed the offenses. The trial court therefore properly denied appellant's *Marsden* motion.

## DISCUSSION

The judgment is affirmed.